[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 13-11683

————————————————

Agency No. A097-603-460

YASMICK JEUNE,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

————————————————

Petition for Review of a Decision of the
Board of Immigration Appeals

————————————————

(January 8, 2016)

Before WILLIAM PRYOR, JULIE CARNES, and SILER,[*] Circuit Judges.

JULIE CARNES, Circuit Judge:

---

[*] Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

Petitioner Yasmick Jeune,[1] a native and citizen of Haiti, seeks review of an order by the Board of Immigration Appeals ("BIA") affirming an immigration judge's denial of Petitioner's request that he not be removed from this country. The Department of Homeland Security ("DHS") had sought to remove Petitioner after the latter's convictions for two criminal offenses. Before the immigration judge, Petitioner contended that, because he is a homosexual, he had been persecuted in the past while living in Haiti and, if returned, he would be persecuted again. The immigration judge concluded that Petitioner had failed to prove either of those assertions. In its review of Petitioner's appeal of that ruling, the BIA concurred with that decision.

Now Petitioner appeals to our Court the denial of his application for withholding of removal. But he has shifted from his previous reliance on his homosexuality as the sole basis for his claims of past and future persecution, and now also focuses on his present assertion that he is a transgender individual. He faces obstacles, both as to our jurisdiction to review his claims and as to the merits of those claims. As to the jurisdictional obstacles, we lack jurisdiction to review claims by an alien that the latter has failed to exhaust or preserve. Because

---

[1] Stating in his appellate brief that he now identifies as a woman, Petitioner uses feminine pronouns in referring to himself on appeal. During his removal proceedings, however, Petitioner identified as a male, and the immigration judge and BIA so referred to him, using masculine pronouns. Given those references in the record, and for the sake of consistency and the avoidance of confusion, we likewise refer to Petitioner as a male.

2

Petitioner did not assert before the BIA arguments he now makes challenging the immigration judge's finding of no past persecution, he has failed to exhaust that claim, and we have no jurisdiction to consider it.

As to the rejection by the BIA and immigration judge (collectively, "the agency") of Petitioner's claim that he would be persecuted if returned to Haiti, Petitioner's status as a criminal alien deprives us of jurisdiction to consider whether he produced sufficient evidence to prove the likelihood of future persecution.  Instead, our review is limited to the question whether the agency committed a legal error in its approach to this question and, in particular, whether the latter gave "reasoned consideration" to the applicant's claims.  After careful review, and with the benefit of oral argument, we conclude that the agency committed no legal error and that its consideration of Petitioner's claims was reasoned.  For the above reasons, we dismiss the petition for review as to Petitioner's claim of past persecution and deny as to his claim of future persecution.

## I.    BACKGROUND

### A.    Initiation of Removal Proceedings

In October 2004, Petitioner was paroled into the United States for the purpose of filing an adjustment of status application as a dependent under the

3

Haitian Responsibility and Immigration Fairness Act.  His status was subsequently adjusted to that of a lawful permanent resident in January 2006.

In March 2009, Petitioner was convicted in a Florida state court for possessing cocaine.  Then, in March 2012, he was again convicted in Florida for carrying a concealed firearm.  Shortly after this second conviction, DHS charged that Petitioner was removable for being an alien convicted of a firearms offense, pursuant to 8 U.S.C. § 1227(a)(2)(C), and for being an alien convicted of a controlled substance offense, pursuant to 8 U.S.C. § 1227(a)(2)(B)(i).  DHS served Petitioner with a notice to appear on these charges.

Petitioner appeared before an immigration judge and conceded that he was removable based on these convictions.  But in an effort to be allowed to remain in this country, he applied for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT"), which are potentially available to an applicant who can show that he has been or will be persecuted in his native country based on the applicant's membership in a particular social group.  Petitioner indicated that, as a homosexual, he was a member of a particular social group and therefore entitled to pursue the above relief.

### B.    Merits Hearing on Withholding of Removal Application

The immigration judge conducted a hearing on Petitioner's application at which Petitioner appeared as the only witness.  Twenty-four years old at the time

of the hearing, Petitioner testified that he had been in the United States since he was sixteen.  As to the sexual orientation on which he based his request for withholding of removal,[2]  Petitioner testified that he had been aware he was gay since he was six or seven years old.  In describing the hostile treatment he had received as a result of his sexual orientation, he noted that an uncle had once beaten him with a stick and threatened to shoot him, so unhappy was the uncle at having a gay nephew.   Also, kids at his school had beaten him up, and he testified about one particular instance that occurred when, as an 11 or 12-year old, he was walking to school and another child called him a "faggot" and threatened to kill him.  When Petitioner tried to run away, other children standing around hit him with a "plastic thing" and grabbed his backpack, which caused him to fall down. After he fell, the kids jumped on him and beat him up.  When Petitioner told his teacher about this incident, the teacher told him that such things would continue to happen unless he changed.

On another occasion, Petitioner was walking home from buying groceries and passed by a group of people.  One of the men in the group called Petitioner a "faggot" and said that the next time Petitioner passed by, he would "be missing."

---

[2]  The immigration judge and BIA denied Petitioner's request for asylum, CAT relief, and withholding of removal.  Petitioner has failed to raise any arguments on appeal concerning the denial of the first two grounds for relief.  Accordingly, he has abandoned all claims except for his claim to withholding of removal.  *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

A woman then threw a rock that hit Petitioner in the face, and Petitioner ran away, at which point a man in the group had his dog chase Petitioner. The dog stopped after Petitioner fell down and started screaming.

### C.    Immigration Judge's Decision

After considering the evidence, the immigration judge denied Petitioner's application and ordered him removed to Haiti. The judge did not question Petitioner's veracity, but he nevertheless determined that the cumulative effect of the described conduct of Petitioner's family, neighbors, and community members constituted only harassment and discrimination, and simply did not rise to the level of severity necessary to support a conclusion that Petitioner had been persecuted while living in Haiti. Indeed, the immigration judge noted that Petitioner had encountered similar discrimination while in the United States, and had even resorted to carrying a gun to protect himself.

As to the background materials concerning conditions in Haiti, the immigration judge indicated that he had reviewed all of the pertinent background materials introduced into evidence. Summarizing them, the judge noted that same-sex conduct had been legal in Haiti since 1986. Further, there were no confirmed reports of official discrimination against the lesbian, gay, bisexual, and transgender ("LGBT") community, albeit such individuals faced "widespread societal discrimination including social stigma and targeted physical violence, sexual

6

assault, and employment insecurity." The materials also suggested that there were certain areas in Haiti with no instances of harassing conduct toward gay people. In particular, rural provinces are more tolerant of the gay community, and some men have been able to live openly as couples in one province. Thus, the immigration judge found that there were certain areas of Haiti in which Petitioner could live without fear of harassment based on his sexual orientation. In short, the immigration judge concluded that Petitioner had failed to meet his burden of showing either past or future persecution based on his sexual orientation.

### D.    Petitioner's Appeal to the BIA

Petitioner filed a notice of appeal to the BIA in which he stated that the immigration judge erred in denying his application for relief. The notice asserted that, if returned to Haiti, Petitioner would suffer persecution sufficient to meet the definition of torture and also that he was "a gay man who suffered past persecution in Haiti."

In the brief filed in support of that appeal, Petitioner asserted that "being a gay man, one who also dresses as a woman," he had met his burden of proving the likelihood of future persecution if returned to Haiti. In challenging the immigration judge's finding that Petitioner faced only discrimination—not persecution—Petitioner argued that the immigration judge had misinterpreted the evidence in the record and had only considered "favorable evidence in the written

7

record as to country conditions for homosexuals and transvestites." Petitioner further argued that the immigration judge's finding that he could live safely in certain neighborhoods in Haiti was "too restrictive an interpretation of internal resettlement."

### E.    BIA Decision

The BIA affirmed the immigration judge's denial of withholding of removal. As to the claim of past persecution, it noted that Petitioner had failed to state any legal or factual basis in his brief for the assertion made in his notice of appeal that he had suffered past persecution. In any event, the BIA concluded that any harassment Petitioner had suffered in Haiti in the past did not amount to persecution.

The BIA further agreed with the immigration judge that Petitioner had not met his burden of showing it was more likely than not that he would be persecuted in Haiti. Specifically, the evidence reflected that same-sex sexual activity between consenting adults had been legal since 1986, albeit homosexuality and transgenderism remained socially taboo. While documentation indicated that there were some instances of violence against homosexual and transgender individuals, the majority of the evidence showed only instances of discrimination, harassment, and ostracism of homosexuals and transgender persons. The record also reflected that homosexuals and transgender persons reported far more tolerance and

8

acceptance in rural provinces than in urban centers.  In short, the BIA agreed with the immigration judge's determination that Petitioner had not met his burden to prove that he would suffer "persecution countrywide in Haiti on account of his sexual preference and/or transgenderism."

## II.    DISCUSSION

Petitioner makes three arguments in his petition for review of the BIA's decision.  First, as to his claim of past persecution, Petitioner argues that the agency committed a legal error by failing to consider, from the perspective of a child, the psychological harm Petitioner had suffered.  Along the same lines, he argues that the agency did not adequately consider the cumulative impact of all the incidents and threats Petitioner had experienced.  As to his claim of future persecution, Petitioner argues that in concluding that he had failed to establish a well-founded fear of persecution, the BIA committed legal error because (1) it overlooked the fact that the immigration judge had not considered his transgenderism separately from his homosexuality and (2) in concluding that Petitioner failed to show a likelihood of persecution in the future, the BIA did not adequately consider the evidence.  As a result of this second alleged lapse, Petitioner argues that the agency's decision was not supported by reasoned consideration.  Finally, he argues that the agency violated its own regulations when it concluded that, given the existence of rural areas that were more tolerant than

9

urban areas toward homosexuality and transgenderism, Petitioner had failed to meet his burden of proving the likelihood that he would suffer persecution countrywide on account of his sexual orientation.

## A.    Standard of Review

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the immigration judge's decision. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001).  When the BIA explicitly agrees with the findings of the immigration judge, we review the decision of both the BIA and immigration judge as to those issues. *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 948 (11th Cir. 2010).  Here, the BIA agreed with the immigration judge's findings, and also issued its own decision.

We review *de novo* our own subject matter jurisdiction. *Gonzalez-Oropeza v. U.S. Att'y Gen.*, 321 F.3d 1331, 1332 (11th Cir. 2003).  We lack jurisdiction to review any claim by "an alien who is removable by reason of having committed a criminal offense covered in [8 U.S.C. § 1227(a)(2)(B) or (C)]."  8 U.S.C. § 1252(a)(2)(C).  Despite this jurisdictional bar, we retain jurisdiction over constitutional claims and questions of law raised in a petition for review. *Id.* § 1252(a)(2)(D).  Here, Petitioner is removable as a criminal alien and he alleges no constitutional errors.  Our jurisdiction is therefore limited to review of questions of law. *Id.* § 1252(a)(2)(C), (D).

In reviewing a claimed legal error, our review is *de novo*. *Ayala*, 605 F.3d at 948. An argument that the agency applied the wrong legal standard in making a determination constitutes a legal question. *See Alvarez Acosta v. U.S. Att'y Gen.*, 524 F.3d 1191, 1197 (11th Cir. 2008). Likewise, an assertion that the agency failed to give reasoned consideration to an issue is a question of law that we review *de novo*. *See Perez-Guerrero v. U.S. Att'y Gen.*, 717 F.3d 1224, 1230–31 (11th Cir. 2013).

## B.    General Principles Concerning Withholding of Removal

An applicant who seeks withholding of removal bears the burden of proving that his life or freedom "more likely than not" would be threatened in his country of return on account of his race, religion, nationality, membership in a particular social group, or political opinion. *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1238 (11th Cir. 2007); 8 U.S.C. § 1231(b)(3)(A). An applicant is relieved of this burden of proof, however, if he can prove that he was persecuted in the past on the same ground that he alleges as the basis for his fear of future persecution. *Sanchez v. U.S. Att'y Gen.*, 392 F.3d 434, 437 (11th Cir. 2004). Proof of past persecution creates a rebuttable presumption that the applicant's life or freedom will be threatened upon return to his country. *See id.* In short, given its importance in determining which party bears the burden of proof, an applicant's inability to prove past persecution can become a pivotal factor in resolving his

request for withholding of removal.  We now consider Petitioner's claim of past persecution.

### C.    Past Persecution

As to Petitioner's claim that he proved past persecution—and therefore that we should presume he will be subject to future persecution in Haiti—we must first determine whether we have jurisdiction over this claim.  We are precluded from reviewing a final order of removal if a petitioner has failed to "exhaust[] all administrative remedies available to [him] as of right."  8 U.S.C. § 1252(d)(1).  And when a petitioner has neglected to assert an error before the BIA that he later attempts to raise before us, the petitioner has failed to exhaust his administrative remedies.  *See Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250–51 (11th Cir. 2006).

Moreover, to exhaust a claim before the BIA, it is not enough that the petitioner has merely identified an issue to that body.  A petitioner has not exhausted a claim unless he has both raised the "core issue" before the BIA, *Montano Cisneros v. U.S. Att'y Gen.*, 514 F.3d 1224, 1228 n.3 (11th Cir. 2008), and also set out any discrete arguments he relies on in support of that claim, *Shkambi v. U.S. Att'y Gen.*, 584 F.3d 1041, 1048 n.4 (11th Cir. 2009) (dismissing as unexhausted a petitioner's specific argument that the immigration judge had engaged in speculation when discrediting his testimony, when the petitioner had

contested only the broader adverse-credibility finding before the BIA).
"Unadorned, conclusory statements do not satisfy this requirement," and the
petitioner must do more than make a passing reference to the issue. *Indrawati v.
U.S. Att'y Gen.*, 779 F.3d 1284, 1297 (11th Cir. 2015); *see Alim v. Gonzales*, 446
F.3d 1239, 1253–54 (11th Cir. 2006). While exhaustion does not require a
petitioner to "use precise legal terminology" or provide well-developed arguments
to support his claim, it does require that the petitioner "provide information
sufficient to enable the BIA to review and correct any errors below." *Indrawati*,
779 F.3d at 1297 (quoting *Arsdi v. Holder*, 659 F.3d 925, 929 (9th Cir. 2011)).
These requirements further the purpose of exhaustion: to give the agency a "full
opportunity" to consider the petitioner's claim and to compile a record that will be
adequate for future judicial review. *Amaya-Artunduaga*, 463 F.3d at 1250.

Petitioner never raised before the BIA the discrete arguments concerning the
past persecution claim that he now makes to us. Consequently, he failed to exhaust
this claim. Specifically, Petitioner argues to us that the immigration judge erred
"legally" in determining whether past persecution occurred because he (1) failed to
specifically focus on the impact that the described harassment by private citizens
would have had on a child and (2) did not adequately consider the cumulative

effect of this harassment.[3]   Yet, nowhere in his appeal to the BIA did Petitioner mention either of these "legal" grounds.  He made no mention at all of past persecution in his brief to the BIA, much less discuss the above issues.  In his notice of appeal initiating the appeal process, he did state that he was a "gay man who suffered past persecution in Haiti."[4]  But even assuming that the identification of a potential issue in a notice of appeal can substitute for a substantive argument in the actual appellate brief,[5] Petitioner's passing reference in that notice to having suffered past persecution gave the BIA no indication of the specific issues that Petitioner now says it should have examined: (1) the alleged failure of the immigration judge to focus on Petitioner's age when the harassment occurred and (2) the alleged failure by the judge to look at the totality of the harassing conduct.

---

[3]  It perhaps seems odd that Petitioner does not directly argue that the immigration judge erred when he found that the evidence was insufficient to support Petitioner's claim of past persecution.  But Petitioner cannot make such an argument to us.  As explained *supra*, given Petitioner's status as a criminal alien, we have no jurisdiction to second-guess the immigration judge on such a factual finding.  Instead, we can reverse that finding only if we find that the reliability of the immigration judge's factual finding is undermined by a legal error:  hence, Petitioner's effort to recast his dissatisfaction with the judge's ruling into something that resembles a legal argument.

[4]  In his notice of appeal, Petitioner stated that:

> The Immigration Judge erred in denying [Petitioner's] application for asylum under INA 208, withholding of removal under INA 241(b)(3), and under Article III of the Convention Against Torture.  [Petitioner] will suffer persecution based on one of the five protected grounds.  [Petitioner] would face harm that rises to the level of torture.  He is a gay man who suffered past persecution in Haiti.  [Petitioner] reserves the right to raise other issues upon receipt of the transcript of proceedings.

[5]  The appellee in this case, the Attorney General, argues that it cannot.

14

We therefore conclude that the conclusory statement in Petitioner's notice of appeal indicating that he had suffered past persecution "as a gay man" was insufficient to exhaust (and thereby preserve) the specific and discrete arguments that he now makes in attacking the immigration judge's conclusion concerning the absence of a showing of past persecution. *See Indrawati*, 779 F.3d at 1297; *Shkambi*, 584 F.3d at 1048 n.4. While Petitioner was not required to put forth well-developed arguments, he was required to set out enough information to allow the BIA to review, assess, and correct any alleged errors by the immigration judge. *See Indrawati*, 779 F.3d at 1297. This he failed to do, and we therefore dismiss the petition for review as to the agency's finding concerning past persecution.

## D.    Future Persecution

Having failed to establish past persecution, the burden therefore remained on Petitioner to prove that, if he were returned to Haiti, his life or freedom would, more likely than not, be threatened there on account of his membership in a particular social group. Moreover, as a criminal alien, Petitioner cannot succeed on an appeal challenging the immigration judge's adverse finding on that point merely by questioning the correctness of that factual finding. Instead, as explained above, he must show that, as a matter of law, the agency erred in its assessment of this question. We conclude that he has failed to do so.

15

Petitioner asserts three errors:  (1) the BIA committed legal error because it overlooked the fact that the immigration judge had not considered his transgenderism, separate from his homosexuality, as a protected category; (2) the agency did not exercise "reasoned consideration" in rejecting his contention that it was more likely than not that he would be persecuted in the future; and (3) it violated its own regulations in concluding that, given the existence of rural areas that were more tolerant than urban areas toward homosexuality, Petitioner had failed to prove the likelihood that he would suffer persecution countrywide on account of his sexual orientation.

### 1.    Separate Consideration of Homosexuality and Transgenderism

Petitioner argues that in finding no likelihood of future persecution, the immigration judge improperly failed to consider the impact of his transgender status separately from that of his homosexuality.  He argues that the BIA also erred legally because it incorrectly assumed that the immigration judge had separately considered these categories.

Petitioner's argument is difficult to follow.  Nevertheless, if the agency missed the distinction that he now articulates, there is a good explanation for that omission.  Specifically, although Petitioner now relies on his alleged transgender status in the appeal before us, he never did so before the agency.  So, it is hard to understand how he can fault it for its failure to intuit an argument he never made.

16

Moreover, his omission below has jurisdictional implications, at least as to the claim that the immigration judge erred.  If Petitioner never argued to the BIA that the immigration judge should have considered the categories separately, he failed to exhaust this claim, and we would have no jurisdiction to consider a newly-made claim in his appeal to our Court.  *See Amaya-Artunduaga*, 463 F.3d at 1250–51.  And, in fact, Petitioner never made this argument.  Hence, we have no jurisdiction.

Specifically, in his brief to the BIA, Petitioner referred to himself only as a "gay man . . . who also dresses as a woman," and stated that the immigration judge had not considered all of the evidence of country conditions for "homosexuals and transvestites."   Contrary to Petitioner's arguments on appeal, these passing references did not readily communicate to the BIA Petitioner's present argument that it is his transgender status that creates the risk of persecution because being a gay man who dresses like a woman does not necessarily mean that one is also a transgender individual.[6]  But even if the terms could be used synonymously, the above description of himself by Petitioner was not sufficient to alert the BIA to the specific argument Petitioner raises here:  that the immigration judge erred by

---

[6]  "Transgender" is an "umbrella term for people whose gender identity and/or gender expression differs from what is typically associated with the sex they were assigned at birth. . . . Many transgender people are prescribed hormones . . . to change their bodies [and] [s]ome undergo surgery as well."  GLAAD Media Reference Guide-Transgender Issues, http://www.glaad.org/reference/transgender (last visited Dec. 17, 2015).  The term "cross-dresser" replaces the term "transvestite" and it is a term for a person who "wear[s] clothes associated with a different sex. . . . Cross-dressers do not wish to permanently change their sex or live full-time as women."  *Id.*

failing to consider his transgender status separately from his homosexuality. *See Indrawati*, 779 F.3d at 1297; *see also Shkambi*, 584 F.3d at 1048 n.4. Accordingly, we dismiss the petition as to this argument.

As to Petitioner's related claim that the BIA, itself, committed legal error because it inaccurately concluded that the immigration judge had separately considered the two categories, we will assume that this claim alleges a legal error that is reviewable notwithstanding the general bar on our jurisdiction to review a denial of withholding of removal for a criminal alien. *See* 8 U.S.C. § 1252(a)(2)(D) (stating that the criminal alien jurisdictional bar does not preclude review of questions of law raised in a petition for review).

Nevertheless, this obscure argument fails on the merits. Again, Petitioner never asserted before the immigration judge or the BIA a likelihood of future persecution based on both his homosexuality and transgender status. At most, in his brief on appeal to the BIA, he attempted to recast his particular social group as including both homosexuals and transvestite[7] individuals. And even if one could read his transvestite reference as signaling that he was a transgender individual, he never argued that these groups should be treated differently or that the evidence showed that they were treated differently. In fact, the background information concerning Haiti did not explicitly discuss the treatment of transgender individuals

---

[7] Again, Petitioner never referred to himself as a transgender individual, but instead used the term "transvestite."

as distinct from homosexuals, but instead broadly described the problems faced by the entire LGBT community.

The BIA likewise did not consider Petitioner to be seeking withholding of removal based on membership in two different groups. Instead, its decision reflects that it analyzed Petitioner's future persecution claim based on his membership in one group—a group that included both homosexual and transgender individuals—which was consistent with Petitioner's classification of his particular social group in his appellate brief to the BIA. Accordingly, we deny the petition for review as to this argument.

2.    Alleged Lack of Reasoned Consideration of Background Evidence

Petitioner also argues that the agency's conclusion that Petitioner had failed to prove the likelihood of future persecution was not supported by "reasoned consideration" of the record. Again, because Petitioner is a criminal alien, we have no jurisdiction to review the agency's factual finding that he failed to prove that he would suffer future persecution on account of his sexual orientation. *Malu v. U.S. Att'y Gen.*, 764 F.3d 1282, 1291 (11th Cir. 2014). But we do have jurisdiction to determine whether it gave reasoned consideration to Petitioner's claims. *Id.* at 1289. And when a decision of an immigration judge or the BIA is so lacking in reasoned consideration and explanation that meaningful review is impossible, we

19

have granted petitions for review, vacated agency decisions, and remanded for further proceedings. *Indrawati*, 779 F.3d at 1302.

A reasoned-consideration examination does not look to whether the agency's decision is supported by substantial evidence. *Perez-Guerrero*, 717 F.3d at 1232. Rather, it looks to see whether the agency has "consider[ed] the issues raised and announce[ed] its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011) (quoting *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1374 (11th Cir. 2006)). Yet, while the agency is required to consider all evidence that a petitioner has submitted, it "need not address specifically each claim the petitioner made or each piece of evidence the petitioner presented." *Cole v. U.S. Att'y Gen.*, 712 F.3d 517, 534 (11th Cir. 2013) (quoting *Carrizo v. U.S. Att'y Gen.*, 652 F.3d 1326, 1332 (11th Cir. 2011)). Ultimately, the agency does not give reasoned consideration to a claim when it misstates the contents of the record, fails to adequately explain its rejection of logical conclusions, or provides justifications for its decision which are unreasonable and which do not respond to any arguments in the record. *See Tan*, 446 F.3d at 1375–77.

Here, the BIA's[8] conclusion regarding the likelihood of future persecution reflects reasoned consideration.  This is not a case where the BIA misstated the contents of the record, failed to adequately explain its rejection of a logical conclusion, or provided an unreasonable justification for its decision that did not respond to an argument in the record.  *See id.*  Contrary to Petitioner's argument that the BIA could have only reached its conclusion by failing to consider certain statements made in the background evidence, the BIA's decision reflects that it cited to the same background evidence that Petitioner claims it ignored.  The BIA acknowledged that the background evidence indicated some instances of violence against homosexual and transgender individuals, but concluded that the majority of the evidence reflected only instances of discrimination, harassment, and ostracism of homosexual and transgender individuals.

The record thus shows that the BIA considered the evidence presented and announced its decision in terms sufficient to enable us to know that it "heard and thought and not merely reacted."  *See Seck*, 663 F.3d at 1364 (quoting *Tan*, 446 F.3d at 1374).  That the BIA reached a conclusion different from that of the Petitioner regarding the import of the background evidence does not mean that the BIA's decision was not supported by reasoned consideration.  And again, to the

---

[8]  In objecting to the agency's decision concerning future persecution, Petitioner refers interchangeably to the decisions of the BIA and the immigration judge.  The BIA's opinion was consistent with that of the immigration judge and so, for simplicity's sake, we refer to its opinion in the remainder of our discussion of this issue.

extent Petitioner challenges the weight and significance the BIA assigned to the background evidence, we lack jurisdiction to consider that argument. *See Perez-Guerrero*, 717 F.3d at 1232 ("[W]e lack jurisdiction to review petitions that 'contest the weight and significance given [by the BIA] to various pieces of evidence.'" (quoting *Cole*, 712 F.3d at 534)). Accordingly, we deny the petition for review as to this issue.

### 3.    Internal Relocation

Petitioner's final argument is that the BIA's additional conclusion that he could reasonably relocate within Haiti to avoid persecution is flawed because the BIA did not specifically address the factors set forth in 8 C.F.R. § 1208.16(b)(3).[9] We disagree.

As noted, an applicant who alleges fear of future persecution, but who has not proved any past persecution, bears the burden of proving that it is more likely than not that his life or freedom will be threatened upon return. 8 C.F.R. § 1208.16(b)(2). Petitioner failed to prove past persecution and the agency

---

[9] We reject the Government's argument that we lack jurisdiction to review this claim because Petitioner failed to exhaust it by not raising it before the BIA. While Petitioner did not use precise legal terminology or put forth a well-developed argument, he provided sufficient information to apprise the BIA of the alleged error by arguing that the IJ's relocation finding was "too restrictive an interpretation of internal resettlement." This statement raises the "core issue" of whether the immigration judge and BIA had to do more than just consider whether he could avoid persecution by living in a certain area, as the regulation governing internal relocation requires two layers of analysis: (1) whether there is some place the petitioner can relocate to avoid the feared persecution, and (2) whether it would be reasonable for the petitioner to move to that location. *See* 8 C.F.R. § 1208.16(b)(2); *see also Montano Cisneros*, 514 F.3d at 1228 n.3.

determined that he also failed to meet the above standard for establishing future persecution. But even had Petitioner met his burden on this point, this is not the end of the inquiry because an applicant cannot avoid removal if the agency "finds that the applicant could avoid a future threat to his or her life or freedom by relocating to another part of the proposed country of removal and, under all the circumstances, it would be reasonable to expect the applicant to do so." *Id.*; *see also Seck*, 663 F.3d at 1365. Further, when the agency has found relocation to be a viable option, an applicant who has failed to prove past persecution bears the burden of establishing "that it would not be reasonable for him . . . to relocate."[10] 8 C.F.R. § 1208.16(b)(3)(i). In determining whether it is reasonable for an applicant to relocate, agency regulations provide that the immigration judge and BIA should consider the factors set forth in 8 C.F.R. § 1208.16(b)(3). These factors include, but are not limited to, the following:

> whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and familial ties.

8 C.F.R. § 1208.16(b)(3).

---

[10] The full text of § 1208.16(b)(3)(i) states, "In cases in which the applicant has not established past persecution, the applicant shall bear the burden of establishing that it would not be reasonable for him or her to relocate, unless the persecutor is a government or is government-sponsored." 8 C.F.R. § 1208.16(b)(3)(i). Here, the alleged persecutor of homosexuals is not the government, nor is it government-sponsored.

Here, Petitioner bore the burden of proving that his relocation to more tolerant, rural parts of Haiti was not reasonable.  Yet, his brief to the BIA failed to address any of the above factors.  Instead, he merely stated that the immigration judge's finding that he "could live in certain neighborhoods in Haiti . . . safely as a homosexual" was "too restrictive an interpretation of internal resettlement."  Petitioner offered no argument as to which factors were relevant to his case, or how and why relocation was unreasonable in light of those factors.  He also did not identify any specific evidence showing that relocation was unreasonable.  Likewise, before the immigration judge, Petitioner made no attempt to explain how the relocation factors would support an argument that he could not reasonably relocate within Haiti.

In any event, we find unpersuasive Petitioner's argument that the agency failed to consider these factors or reflect its awareness that relocation must be reasonable.  While the BIA's order did not recite the specific regulatory factors listed in § 1208.16(b)(3), the BIA clearly evidenced its awareness of these factors and of the requirement that relocation had to be reasonable by citing to our decision in *Arboleda v. U.S. Att'y Gen.*, 434 F.3d

24

1220 (11th Cir. 2006).[11]  A key part of our discussion in that decision focused on the need for the agency to determine the reasonableness of relocation and to consider the specified regulatory factors in making that determination.  Given the record before the BIA, which did not include any specific argument by Petitioner as to why relocation would be unreasonable in light of the regulatory factors, we conclude that the BIA's citation to *Arboleda* was sufficient to show that it had appropriately considered the reasonableness of Petitioner's relocation within Haiti.[12]  *See Arboleda*, 434 F.3d at 1226; 8 C.F.R. § 1208.16(b)(3)(i).  Accordingly, we deny the petition as to this issue.

## III.    CONCLUSION

---

[11]  In *Arboleda*, we concluded that the BIA's finding concerning internal relocation was incomplete because it did not consider whether relocation was reasonable in light of the factors listed in § 1208.16(b)(3); therefore, remand was necessary.  434 F.3d at 1226.  Notably, in *Arboleda,* the petitioners had established past persecution, which showing gave rise to a rebuttable presumption of future persecution that then shifted the burden of proving the reasonableness of internal relocation to the DHS.  *Id.*  We concluded that the DHS had failed to show the reasonableness of the relocation, and that, in fact, the record compelled a conclusion that the persecution at issue existed country-wide and could not be escaped merely by relocating to a particular part of Colombia.  434 F.3d at 1224.  As noted, in this case Petitioner never showed past persecution, and therefore it was he who bore the burden of showing the unreasonableness of relocation.  *See* 8 C.F.R. § 1208.16(b)(3)(i) .

[12]  Because the criminal alien jurisdictional bar limits our review to questions of law and constitutional claims, we are not permitted to review whether substantial evidence supports the BIA's determination that it was reasonable for Petitioner to relocate within Haiti.  8 U.S.C. § 1252(a)(2)(C), (D); *see also Diallo v. U.S. Att'y Gen.*, 596 F.3d 1329, 1334 (11th Cir. 2010) (stating that "the question of relocation is a factual one").

Petitioner failed to exhaust his past persecution claim, as well as the argument in support of his future persecution claim that the immigration judge erred by not separately considering his homosexuality and transgender status.  For this reason, we dismiss the petition for review as to that claim and that argument. We deny the remainder of the petition for the reasons explained above.

**PETITION DISMISSED IN PART, DENIED IN PART.**