[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-14398

Non-Argument Calendar

_____

KARLA M. AZMITIA,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A076-417-155

_____

Before JILL PRYOR, BRANCH, and EDMONDSON, Circuit Judges.

PER CURIAM:

Karla Azmitia ("Petitioner"), a native and citizen of Guatemala, petitions for review of the order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ's") denial of cancellation of removal.  No reversible error has been shown; we deny the petition.

Petitioner entered the United States without inspection in January 1997.  On 2 June 1998, the Immigration and Naturalization Service served Petitioner personally with a Notice to Appear ("NTA").  The NTA charged Petitioner as removable for being in the United States without admission or parole.  In writing, the NTA ordered Petitioner to appear before an IJ at the Miami Immigration Court at 9:00 a.m. on 14 July 1998.

No hearing was held on 14 July 1998.  The hearing was moved to a later date.  Petitioner's removal hearing actually took place, instead, on 25 August 1998.  Petitioner failed to attend the hearing; the IJ ordered Petitioner removed *in absentia*.

Nearly twenty years later, Petitioner (through counsel) moved to rescind her *in absentia* removal order and to reopen her removal proceedings.  Petitioner asserted that she never received notice of the 25 August 1998 hearing.  An IJ granted Petitioner's motion.  The IJ noted that the record contained no notice resetting the master calendar hearing for 25 August 1998.  After Petitioner's

removal proceedings were reopened, Petitioner applied for cancellation of removal.

At a merits hearing on Petitioner's application, the government argued that Petitioner was ineligible for cancellation of removal because she did not have -- prior to receiving the written NTA in 1998 -- ten years of continuous physical presence in the United States. Petitioner responded that the NTA was defective and, thus, did not trigger the "stop-time rule": a rule that stops the accrual of continuous physical presence upon service of the NTA. According to Petitioner -- although the NTA listed a time for a hearing -- the NTA did not specify the time of her actual hearing: a hearing for which Petitioner was given no written notice.

The IJ denied Petitioner's application and ordered Petitioner removed. The BIA later affirmed the IJ's decision and dismissed Petitioner's appeal. The BIA determined that Petitioner's period of continuous physical presence ended on 2 June 1998: the day Petitioner was served the NTA specifying the time and place set for removal hearing. The BIA concluded that Petitioner failed to establish ten years of continuous physical presence preceding the service of the NTA and was, thus, statutorily ineligible for cancellation of removal. This appeal followed.

Because the BIA did not adopt expressly the IJ's decision, we review only the BIA's decision. *See Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 799 (11th Cir. 2016). We review *de novo* the BIA's conclusions of law. *See Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009).

The Attorney General has discretion to cancel the removal of a non-citizen under certain circumstances. *See* 8 U.S.C. § 1229b(b)(1). Our jurisdiction to review the BIA's denial of discretionary relief -- including cancellation of removal -- is limited to reviewing "constitutional claims or questions of law." *See* 8 U.S.C. § 1252(a)(2)(B), (D); *Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1262 (11th Cir. 2020) (*en banc*).

To demonstrate eligibility for cancellation of removal, a non-citizen must show, among other things, that she "has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of [her] application." *See* 8 U.S.C. § 1229b(b)(1)(A). Under the so-called "stop-time rule," a non-citizen's period of continuous physical presence is "deemed to end . . . when the alien is served a notice to appear under" 8 U.S.C. § 1229(a). *See* 8 U.S.C. § 1229b(d)(1); *Pereira v. Sessions*, 138 S. Ct. 2105, 2109 (2018).

To trigger the stop-time rule, an NTA must contain -- within a single document -- the information specified in section 1229(a)(1). *See Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1480-86 (2021); *Pereira*, 138 S. Ct. at 2113-14. Pertinent to this appeal, the NTA must include "[t]he time and place at which the [removal] proceedings will be held." *See* 8 U.S.C. § 1229(a)(1)(G); *Pereira*, 138 S. Ct. at 2113-14 ("A putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under section 1229(a),' and so does not trigger the stop-time rule.").

The BIA committed no error in concluding that the June 1998 NTA served on Petitioner was a sufficient event to trigger the stop-time rule.  The NTA included all the information specified in section 1229(a)(1), including the time and place of Petitioner's then-scheduled hearing.  Nothing evidences that -- when the NTA issued -- the hearing time specified on the NTA was incorrect: it set out the then honestly intended time and date (at least, no one claims otherwise).

That the hearing was later postponed and in fact held on a date different from the date listed on the NTA does not render the NTA non-compliant with section 1229(a)(1).  The statute provides expressly that a hearing time may be rescheduled.  *See* 8 U.S.C. § 1229(a)(2)(A) (requiring written notice of "any change or postpone-ment in the time and place of [removal] proceedings").  We accept that the government erred by failing to notify Petitioner of the re-scheduled hearing date, as required under section 1229(a)(2).  That error, however, has no bearing on whether the NTA -- when issued -- contained the information in section 1229(a)(1) necessary to trig-ger the stop-time rule.  The NTA did contain the triggering infor-mation.  Moreover, the government's failure to provide adequate notice of the rescheduled hearing was a different issue and was later remedied by the rescission of the *in-absentia*-removal order and the reopening of Petitioner's removal proceedings.

Because the June 1998 NTA comprised a single document listing the required information in section 1229(a)(1), the BIA com-mitted no error in concluding that the NTA was sufficient to trigger

the stop-time rule.  Under the stop-time rule, Petitioner's period of continuous physical presence in the United States ran from her date of entry in January 1997 until she was served with the NTA in June 1998.  Because Petitioner cannot demonstrate at least ten years of continuous physical presence in the United States, the BIA concluded correctly that Petitioner is statutorily ineligible for cancellation of removal.

PETITION DENIED.