[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-14275

Non-Argument Calendar

_____

ASHRAF MOUSA SAID HMIDAN,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A095-533-552

_____

_____

No. 22-14276

Non-Argument Calendar

_____

ASHRAF MOUSA SAID HMIDAN,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A095-533-552

_____

Before WILLIAM PRYOR, Chief Judge, and ABUDU and ANDERSON,
Circuit Judges.

PER CURIAM:

Ashraf Mousa Said Hmidan, a native and citizen of the Palestinian Territories, petitions for review of the denial of his

application for adjustment of status under section 245 of the Immigration and Nationality Act, 8 U.S.C. § 1255(a). The Board of Immigration Appeals dismissed Hmidan's appeal and affirmed the immigration judge's finding that he was inadmissible under section 212(a)(3)(B)(i)(I) of the Act, 8 U.S.C. § 1182(a)(3)(B)(i)(I), for having "engaged in a terrorist activity," *id.*, when he threw rocks and Molotov cocktails at Israeli soldiers during the Palestinian intifadas. Hmidan challenges the immigration judge's decisions to limit expert testimony about his subjective intent and to exclude his expert's second addendum. We deny the petition.

We review our subject matter jurisdiction *de novo*. *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 799 (11th Cir. 2016). Although we lack jurisdiction to review the denial of discretionary relief, 8 U.S.C. §§ 1182, 1252(a)(2)(B), we have jurisdiction to review constitutional claims and questions of law, *id.* § 1252(a)(2)(D). *Patel v. Garland*, 142 S. Ct. 1614, 1623, 1627 (2022).

Applicants for adjustment of status bear the burden of proving that they satisfy the requirements for eligibility and merit a favorable exercise of discretion. 8 U.S.C. § 1229a(c)(4)(A). One eligibility requirement is that the applicant must be admissible. *Id.* § 1255(a). A noncitizen who "has engaged in a terrorist activity" is inadmissible. *Id.* § 1182(a)(3)(B)(i)(I). "Terrorist activity" is defined as any activity that is unlawful "under the laws of the place where it is committed" and includes the use of any "explosive, firearm, or other weapon or dangerous device . . . with intent to endanger,

directly or indirectly, the safety of one or more individuals or to cause substantial damage to property." *Id*. § 1182(a)(3)(B)(iii)(V)(b).

An immigration judge has the authority to "receive evidence[] and interrogate, examine, and cross-examine" the noncitizen and witnesses during removal proceedings. *Id*. § 1229a(b)(1). The regulations provide that "immigration judges shall exercise their independent judgment and discretion and may take any action consistent with their authorities under the Act and regulations that is appropriate and necessary for the disposition" of the cases before them. 8 C.F.R. § 1003.10(b). Immigration judges have "broad discretion to admit and consider relevant and probative evidence," including witness testimony. *Matter of D-R-*, 25 I. & N. Dec. 445, 458 (BIA 2011); *Matter of J-G-T-*, 28 I. & N. Dec. 97, 101–02 (BIA 2020) ("Expert testimony in immigration proceedings is relevant if it will help the Immigration Judge understand the evidence or decide a fact in issue.").

Hmidan argues that the immigration judge erred by limiting the scope of his expert witness, Dr. Shaul Gabbay, but we disagree. The immigration judge acted within her broad discretion by limiting the scope of Dr. Gabbay's testimony to matters within his expertise and personal knowledge. *See Matter of D-R-*, 25 I. & N. Dec. at 458. Hmidan admitted to throwing stones and Molotov cocktails during the second intifada but insisted that he never intended to harm Israeli soldiers. At Hmidan's first hearing, Dr. Gabbay, a professor of Middle Eastern studies, testified that Hmidan's actions were not acts of terrorism because they were part of the greater

struggle for self-determination. But Dr. Gabbay acknowledged that he never met Hmidan before the hearing and did not interview him before writing his expert report. Dr. Gabbay also acknowledged that only Hmidan could testify about his intent. The immigration judge found that Dr. Gabbay could not testify about Hmidan's actions or intent.

Although the immigration judge granted Hmidan a continuance to find another expert witness, Hmidan instead sought to present more testimony from Dr. Gabbay at his final hearing. He explained that Dr. Gabbay had since traveled to Israel on vacation and interviewed Israeli soldiers allegedly present during the incidents. Dr. Gabbay admitted that his interviews were not conducted using his usual research methods and stated that he could not reveal the soldiers' identities. Because the issue of Hmidan's subjective intent was outside of Dr. Gabbay's area of expertise and his interviews were unreliable, the immigration judge did not abuse her discretion by excluding Dr. Gabbay's testimony. *See id.*

Hmidan argues that the immigration judge erred by excluding as untimely Dr. Gabbay's second addendum to his expert report, but it was Dr. Gabbay's *first* addendum, not his second, that the immigration judge excluded as untimely. Hmidan submitted the second addendum after the final hearing. The second addendum, which was nearly identical to the first, contained Dr. Gabbay's statement that he stood by his analysis, as well as five new photographs of an October 2000 protest site that he took during his 2016 vacation. The immigration judge found that "the documents

provide context[, but] nothing in them indicates that [Hmidan] was not engaged in terrorist activity." The Board construed this statement to mean that the immigration judge decided "not to admit" the second addendum based on her weighing of the evidence.

The immigration judge did not abuse her broad discretion. *See Matter of J-G-T-*, 28 I. & N. Dec. at 102; *Matter of D-R-*, 25 I. & N. Dec. at 458. Dr. Gabbay acknowledged that he did not rely on his usual research methods. And his photographs of a single protest location, taken more than a decade after the second intifada, were not probative of the issue of Hmidan's subjective intent.

We **DENY** Hmidan's petition for review.