[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11703

Non-Argument Calendar

_____

FREDY HERNANDEZ-DIAZ,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A205-014-390

_____

Before LUCK, BRASHER, and MARCUS, Circuit Judges.

PER CURIAM:

No judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, Fed. R. App. P. 35, accordingly, rehearing en banc is DENIED. Appellant's petition for panel rehearing is GRANTED. We VACATE our prior opinion in this case and substitute the following in its place:

Fredy Hernandez-Diaz petitions us for review of the Board of Immigration Appeals' ("BIA") final order affirming the Immigration Judge's ("IJ") denial of his application for cancellation of removal. He says that the BIA: (1) erred in concluding that he failed to prove exceptional and extremely unusual hardship to his children were he deported; and (2) did not give reasoned consideration to his arguments. After careful review, we deny the petition.

## I.

Hernandez-Diaz is a Mexican citizen who entered the United States without inspection in April 2002, when he was seventeen years old. He has lived in this country ever since. In June 2012, the Department of Homeland Security charged him as removable for being a noncitizen present in the United States without being admitted or paroled. *See* 8 U.S.C. § 1182(a)(6)(A)(i). Hernandez-Diaz conceded removability and applied for cancellation of removal, claiming that his three United States-citizen daughters would face exceptional and extremely unusual hardship if he were removed. *See id*. § 1229b(b)(1).

In his application for cancellation of removal, Hernandez-Diaz attached his driver's license, social security card, driving history, tax returns, bank statements, children's birth certificates, children's medical and school records, a letter from his employer, affidavits from friends, and country reports for Mexico. Most relevantly, he included an educational plan for his oldest daughter, Diana, to address her developmental delay. The report noted that Diana received speech and language therapy, and that, although she was making progress, she still "struggle[d] with written expression, understanding new vocabulary, and Reading Comprehension which impact[ed] her success within the general curriculum."

Hernandez-Diaz appeared for hearings in 2012, 2013, 2017, and 2019, offering his testimony at the last one. There, he explained that he lived with his partner, whom he had been with since 2006, and his three daughters, and his partner was pregnant with their fourth child. His parents and two of his sisters lived in Mexico, while his four other siblings lived in the United States without status. Hernandez-Diaz regularly sent money to his parents, in part because his father could no longer work after an accident.

Hernandez-Diaz testified that if he were removed, his partner and their children would go with him because his partner did not work. But he thought life would be hard for them. Hernandez-Diaz didn't think that he could find work in Mexico. His parents lived in a small home without running water, the nearest village was one hour by car, and the nearest hospital was three hours away. At best, he would make only enough money for basic needs,

like food. He said that while he would receive free medical care, his daughters would not because they were not Mexican citizens.

As for his daughters' lives in the United States, Hernandez-Diaz said that his partner walked them to and from school and prepared their meals. He paid for insurance, but they also received assistance through the Special Supplemental Nutrition Program for Women, Infants, and Children, and free lunches at school. Focusing on Diana's developmental delay, Hernandez-Diaz testified that she had never failed or repeated a class, but she received speech therapy and help with homework. She could not communicate well with others and was treated for depression at school, although she was not clinically diagnosed. Hernandez-Diaz did not submit country conditions reports showing what treatments would be available for Diana in Mexico, and -- because he had not returned since 2002 -- he did not know himself. He added that no one in the United States with status could take care of his children for him.

The IJ issued an oral decision denying Hernandez-Diaz's application. After concluding that Hernandez-Diaz had satisfied some of the statutory requirements for cancellation of removal, the IJ found that he fell short of establishing exceptional and extremely unusual hardship for his daughters if he were deported. The IJ acknowledged Diana's learning disability, but noted that she had not failed any classes, was receiving therapy, and had performed adequately at the correct grade level thus far. Further, the IJ found no evidence from Hernandez-Diaz's partner directly that she would join him in Mexico, and "presumed that she will continue

caring for her children in the event that he is removed to Mexico and she remains in the United States." For these reasons, Hernandez-Diaz did not meet the "very high standard imposed by [the] exceptional and extremely unusual hardship" requirement.[1]

Hernandez-Diaz appealed the IJ's decision to the BIA, arguing that the IJ did not properly consider his daughter's educational plan, failed to apply certain BIA precedent, and gave only a cursory treatment of the facts. The BIA "adopt[ed] and affirm[ed] the decision of the Immigration Judge with respect to his determination that the respondent did not demonstrate the requisite level of hardship to a qualifying relative for purposes of cancellation of removal." The BIA acknowledged Hernandez-Diaz's arguments on appeal but concluded that they were "not supported by the record" and "decline[d] to disturb the Immigration Judge's decision."

This timely petition for review followed.

## II.

On a petition for review of a BIA final decision, we inspect the BIA's decision, as well as the IJ's decision to the extent the BIA expressly adopted it. *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 947–48 (11th Cir. 2010). The exceptional and extremely unusual hardship determination is a mixed question of law and fact, and we exercise "deferential" review over it. *Wilkinson v. Garland*, 601 U.S. 209,

---

[1] The IJ also held that, even if Hernandez-Diaz were eligible for relief, it would be denied as a matter of discretion due to prior incorrect tax filings he had submitted and two drinking-related driving arrests.

221, 225 (2024). The factual findings underlying that determination, however, are unreviewable. *Id.* at 225. Meanwhile, we review *de novo* questions of law, including whether the BIA provided reasoned consideration to an application. *Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 872 (11th Cir. 2018).

## A.

The first issue before us is whether the BIA erred in affirming the IJ's finding that Hernandez-Diaz's daughters would not suffer exceptional and extremely unusual hardship under § 1229b(b)(1) if he were removed. We conclude that it did not.

In *Wilkinson v. Garland*, 601 U.S. 209 (2024), the Supreme Court abrogated our precedent to hold that the federal courts have jurisdiction to review an exceptional and extremely unusual hardship determination, though we cannot review the factual findings on which it rests. *Id.* at 221, 225.[2] The Supreme Court reached its conclusion in this way. It began by explaining that 8 U.S.C. § 1252 "generally grants federal courts the power to review final orders of removal." *Id.* at 218. Though § 1252(a)(2)(B)(i) strips courts of jurisdiction to review decisions regarding discretionary relief, including cancellation-of-removal decisions, § 1252(a)(2)(D) restores jurisdiction to review "constitutional claims or questions of law," *id.* at 218, 221. The Supreme Court noted that it had previously held that the term "questions of law" in § 1252(a)(2)(D) "includes the

---

[2] We ordered the parties to file supplemental briefing addressing the effect of *Wilkinson* on this case. We hereby GRANT the parties' joint motion for a second extension of time to file their supplemental briefs.

application of a legal standard to undisputed or established facts," *i.e.* mixed questions of law and fact. *Id.* at 217 (quoting *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 227 (2020)). The Court then reasoned that because the exceptional and extremely unusual hardship determination "is a legal standard that an IJ applies to facts," it is, "inescapably, a mixed question of law and fact" that is reviewable under § 1252(a)(2)(D). *Id.* at 221. But, the Court emphasized, the exceptional and extremely unusual hardship determination -- though a mixed question of fact and law -- is "primarily factual," so our "review is deferential." *Id.* at 225. It also expressly continued to hold that "[t]he facts underlying any determination on cancellation of removal . . . remain unreviewable." *Id.*

Despite this lengthy explanation from the Supreme Court in *Wilkinson*, Hernandez-Diaz argues that our review of the exceptional and extremely unusual hardship determination in his case should be *de novo*. Hernandez-Diaz's argument runs into a fundamental problem: *de novo* review is incompatible with *Wilkinson*'s direction that our review "is deferential." *Id.* Nevertheless, we need not determine precisely how much deference is due because Hernandez-Diaz cannot prevail in this appeal even if we were to give the agency's decision minimal deference.

Under the statute, the Attorney General has discretion to cancel the removal of an alien who demonstrates, among other things, "that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for

permanent residence." 8 U.S.C. § 1229b(b)(1)(D). "[T]he application of the 'exceptional and extremely unusual hardship' standard requires an IJ to evaluate a number of factors in determining whether any hardship to a U.S.-citizen or permanent-resident family member is 'substantially different from, or beyond, that which would normally be expected from the deportation' of a 'close family membe[r].'" *Wilkinson*, 601 U.S. at 222 (quoting *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 65 (BIA 2001)). These factors include "the ages, health, and circumstances of qualifying lawful permanent resident and United States citizen relatives." *In re Monreal-Aguinaga*, 23 I. & N. Dec. at 63. So, for instance, a "strong applicant might have a qualifying child with very serious health issues, or compelling special needs in school." *Id.* All factors are considered in the aggregate, and, overall, the standard is a "very high one indeed." *Id.* at 60, 64.

In this case, Hernandez-Diaz sought to satisfy the "exceptional and extremely unusual hardship" standard based on his three U.S.-citizen children, "specifically his oldest daughter Diana." As we've noted, in considering Hernandez-Diaz's claim, the IJ, whose decision the BIA adopted, expressly considered Diana's age and the fact that she suffers from a learning disability. The IJ detailed that Diana -- who was 12 years old when the IJ rendered his decision (and is now 17 years old) -- was receiving speech therapy and was passing her classes without impediment, and she was enrolled in the appropriate grade for her age. The IJ then found no evidence that Hernandez-Diaz's long-term partner, who is Diana's mother, would not be able to stay in the United States and continue caring

22-11703                Opinion of the Court                    9

for her children in the event Hernandez-Diaz is removed. On this record, the IJ found that these factors did not meet the "very high" bar for finding exceptional and extremely unusual hardship. The BIA adopted and affirmed the IJ's decision with respect to his determination that Hernandez-Diaz did not establish the requisite level of hardship.

There is no basis for us to overturn the agency's decision. For starters, the IJ's finding that there was insufficient evidence to show that Hernandez-Diaz's children would be forced to return to Mexico with him was a finding of fact and, as such, it is unreviewable. *See Wilkinson*, 601 U.S. at 225. As is the IJ's finding that the children, instead, could remain in the United States with their mother, where Diana is currently receiving sufficient care for her learning disability. Because we must accept the IJ's findings about the continued care of Hernandez-Diaz's children, the agency had more than sufficient reason to conclude that the children would not suffer hardship that is "substantially different from, or beyond, that which would normally be expected from the deportation of a close family member." *Id*. at 222 (cleaned up).[3] This is particularly

---

[3] To the extent Hernandez-Diaz argues that the agency's finding of no exceptional and extremely unusual hardship is inconsistent with the case law, we disagree. For example, in *In re Gonzalez Recinas*, 23 I. & N. Dec. 467 (BIA 2002), the BIA found that a single mother's four U.S.-citizen children would suffer exceptional and extremely unusual hardship if she were removed to Mexico because the children were "entirely dependent on their single mother for support" and the children would face increased hardship "upon return to Mexico" because they would be "completely dependent on their mother's ability" to provide for them, both financially and emotionally. *Id*. at 471–72. Moreover,

true given the "very high" standard that governs this determination, *In re Monreal-Aguinaga*, 23 I. & N. Dec. at 63, and the Supreme Court's instruction that our review of the agency's decision "is deferential." *Wilkinson*, 601 U.S. at 225. Accordingly, regardless of the level of deference we apply, we cannot say that the IJ and the BIA erred in deciding that Hernandez-Diaz did not establish a showing of exceptional and extremely unusual hardship under 8 U.S.C. § 1229b(b)(1).

## B.

The next issue before us is whether the BIA gave reasoned consideration to Hernandez-Diaz's appeal of the IJ's rejection of his application. In its decision, the BIA said that it "adopt[ed] and affirm[ed] the decision of the Immigration Judge with respect to his determination that the respondent did not demonstrate the requisite level of hardship to a qualifying relative for purposes of

---

the mother had raised the children by herself, the children knew "no other way of life," and they did not speak Spanish proficiently, nor could they read or write Spanish. *Id.* Here, by contrast, Hernandez-Diaz has not raised his children by himself: he has a partner who actively takes part in raising their children. And, crucially, the IJ here found that Hernandez-Diaz's children would not be forced to return to Mexico with him but could, instead, remain in the United States with their mother. Thus, this case is plainly distinguishable from *Gonzalez Recinas* and any other cases he cites. *Id.*; *see also Cuauhtenango-Alvarado v. U.S. Att'y Gen.*, 855 F. App'x 559, 559–60 (11th Cir. 2021) (per curiam) (unpublished decision reversing the BIA's denial of cancellation of removal where a Mexican-citizen petitioner, who was a single mother with no family support in Mexico, faced deportation to Mexico, but her children did not speak, read, or write in Spanish and their father was not actively involved in their lives).

cancellation of removal." Where, as here, an order of the BIA adopts certain findings of the Immigration Judge, "we review *both* the determination of the BIA and the determination of the IJ." *Bing Quan Lin*, 881 F.3d at 872 (emphasis added); *see also Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 799 (11th Cir. 2016) ("When the BIA explicitly agrees with the findings of the immigration judge, we review the decision of both the BIA and immigration judge as to those issues.").

Our "reasoned-consideration examination does not look to whether the agency's decision is supported by substantial evidence." *Jeune*, 810 F.3d at 803. Rather, we ask if the agency "consider[ed] the issues raised and announc[ed] its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011) (quotations omitted). But the agency need not address every single claim or piece of evidence. *Jeune*, 810 F.3d at 803. "Ultimately, the agency does not give reasoned consideration to a claim when it misstates the contents of the record, fails to adequately explain its rejection of logical conclusions, or provides justifications for its decision which are unreasonable and which do not respond to any arguments in the record." *Id.*

This is not a case where the IJ misstated any facts, gave unreasonable explanations, failed to explain itself, or ignored arguments in the record. Instead, the IJ cited the correct BIA precedent in making the hardship determination and found facts based on Hernandez-Diaz's application and testimony. The IJ rightly

explained that he "must consider all the factors in the aggregate" and identified the "[i]mportant factors," like "ages, health and circumstances" of Hernandez-Diaz's daughters.  He concluded that, despite Diana's learning disability, she still performed well in school and the record did not reflect a risk of that changing, even if Hernandez-Diaz were removed.  The BIA adopted the IJ's view of the facts, citing additional relevant precedent about the high standard for exceptional and extremely unusual hardship.

This analysis was not "so fundamentally incomplete that a review of legal and factual determinations would be quixotic." *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1302 (11th Cir. 2015).  Rather, it shows a thorough and thought-out analysis under the pertinent hardship law.  And it is not our job to review the facts and decide whether we would come to a different conclusion.  Instead, "[o]ur inquiry concerns process, not substance." *Id.*  Nothing in the IJ's order indicates a defective process.

Hernandez-Diaz does not address the IJ's opinion on appeal.  Instead, he says that the BIA opinion alone was insufficient because it was "'entirely silent' as to [his] arguments regarding the immigration judge's mischaracterizations, failure to consider, cursory treatment as to the majority of the petitioner's evidence and testimony."  But "the [BIA] need not write a lengthy opinion that merely repeats the immigration judge's reasons for denying the requested relief," and "instead may state that it affirms the immigration judge's decision for the reasons set forth in the decision." *Prado-Gonzalez v. INS*, 75 F.3d 631, 632 (11th Cir. 1996) (per curiam).

Here, the BIA did just that, and Hernandez-Diaz provided no compelling reason to question the IJ's decision itself.

Finally, to the extent Hernandez-Diaz attempts to use the reasoned-consideration analysis as a backdoor challenge to the IJ's findings of fact, we cannot review this claim. *See Wilkinson*, 601 U.S. at 225 ("The facts underlying any determination on cancellation of removal . . . remain unreviewable."). Hernandez-Diaz's challenges to the IJ's finding that his partner would remain in the United States, his supposed failure to address the unavailability of adequate of speech therapy in Mexico, and any other inherently factual questions exceed our scope of review. *See id.*

Accordingly, following the Supreme Court's recent decision in *Wilkinson*, we cannot say that the agency's exceptional and extremely unusual hardship factual finding was erroneous, nor was it lacking in reasoned determination.

**PETITION DENIED.**