[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-11274
Non-Argument Calendar
_____

Agency No. A201-705-488

LUIS ALFONSO TIJERINO-SEVILLA,
a.k.a. Lolita Tijerino-Sevilla,

                                                                          Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                                          Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(December 18, 2020)

Before WILLIAM PRYOR, Chief Judge, MARTIN and BRANCH, Circuit Judges.

PER CURIAM:

Luis Alfonso Tijerino-Sevilla, a native and citizen of Nicaragua, petitions for review of a decision that affirmed the denial of her applications for asylum and for withholding of removal under the Immigration and Nationality Act, 8 U.S.C. §§ 1158(a), 1231(b)(3), and for relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, 8 C.F.R. § 208.16(c). Tijerino sought immigration relief based on her membership in the social groups of transgender women, sexual minorities, and lesbian, gay, bisexual, and transgender persons in Nicaragua. The Board of Immigration Appeals affirmed summarily the findings of an immigration judge that Tijerino suffered no past persecution, that she lacked a well-founded fear of future persecution, that she could not satisfy the higher standard required for withholding of removal, and it was unlikely she would be tortured if she returned to Nicaragua. We deny Tijerino's petition.

When the Board of Immigration Appeal affirms a decision of an immigration judge without opinion, we review the immigration judge's decision. *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1235 (11th Cir. 2006). We review that decision to determine whether it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Lopez v. U.S. Att'y Gen.*, 914 F.3d 1292, 1297 (11th Cir. 2019) (quoting *Indrawati v. U.S. Att'y Gen.*, 779

2

F.3d 1284, 1297 (11th Cir. 2015)). We will not disturb the decision unless the record "compels" a contrary conclusion. *Id.*

Substantial evidence supports the finding that Tijerino was not entitled to asylum based on past persecution. Tijerino alleged that she was persecuted once as a child, but she omitted that incident from her appeal to the Board. *See Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 800 (11th Cir. 2016). Tijerino also alleged that, as an adult, she was sexually assaulted by gang members at the direction of the owner of a bar who sought to hire her to work as a prostitute. But Tijerino's evidence "of private violence . . . [or having] been the victim of criminal activity d[id] not constitute evidence of persecution based on a statutorily protected ground," *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1258 (11th Cir. 2006). Tijerino testified that the owner of the bar ordered the attack on her because she refused his offer of employment. *See id.* at 1257; 8 U.S.C. § 1158(b)(1)(B)(i). Tijerino reported neither attack to the police, *see Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341, 1345 (11th Cir. 2007), and after her childhood encounter, she lived with her grandmother in Managua without incident before she moved to Mexico, *see* 8 C.F.R. § 208.13(b)(3)(i). Tijerino testified that the owner of a bar was a police officer, but on appeal to the Board she did not dispute the immigration judge's finding that the owner acted as a "rogue official" whose wrongdoing was not sanctioned by law enforcement. *See Lopez*, 504 F.3d at 1345.

3

Substantial evidence also supported the finding that Tijerino lacked a good reason to fear future persecution that would warrant asylum or withholding of removal. Tijerino offered no evidence that she would be singled out for persecution in Nicaragua because she was a transgender woman. *See Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1286 (11th Cir. 2005). She had no further contact with any of her assailants. Tijerino submitted evidence of violence by the government against members of sexual minorities, but the mistreatment was perpetrated against participants in anti-government protests. A human rights report stated that societal discrimination against transgender women occurs, but the report also stated that Nicaraguan law afforded citizens equal protection and did not regulate sexual activities of consenting adults. The record did not compel a conclusion that any discrimination and mistreatment was so extreme and pervasive as to establish a pattern or practice of persecution of members of sexual minorities in Nicaragua. *See Lingeswaran v. U.S. Att'y Gen.*, 969 F.3d 1278, 1291 (11th Cir. 2020). Because Tijerino could not prove she was entitled to asylum, she necessarily could not satisfy the more stringent standard to qualify for withholding of removal. *D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 819 (11th Cir. 2004).

Substantial evidence also supported the decision to deny Tijerino relief under the Convention. Tijerino submitted no evidence that she or any member of a sexual minority in Nicaragua had been tortured. *See Jean-Pierre v. U.S. Att'y Gen.*,

500 F.3d 1315, 1324 (11th Cir. 2007) (requiring an applicant to prove that she "would be individually and intentionally singled out for harsh treatment"). The government of Nicaragua was neither aware of nor did it acquiesce in either instance when Tijerino was sexually abused. *See Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004) (torture must be inflicted "by or with the acquiescence of the government"). And Tijerino's general fear of being tortured based on evidence of some mistreatment of sexual minorities in Nicaraguan society does not compel a conclusion that she will more likely than not be tortured if returned to her homeland. *See Jean-Pierre v. U.S. Att'y Gen.*, 500 F.3d 1315, 1324 (11th Cir. 2007) (requiring evidence of more than "generalized mistreatment" to qualify for protection under the Convention).

We **DENY** Tijerino's petition for review.

5