[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10116

_____

Agency No. A206-621-829

JOSE CARLOS ANGEL-LOPEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(April 22, 2021)

Before LAGOA, ANDERSON and MARCUS, Circuit Judges.

PER CURIAM:

In this immigration proceeding, Jose Carlos Angel-Lopez challenges a decision by the Board of Immigration Appeals ("BIA") affirming an Immigration Judge's ("IJ") denial of his application for asylum and order of removal. After careful review and with the benefit of oral argument, we deny his petition.

I.

Angel-Lopez, a native and citizen of El Salvador, entered the United States without inspection in 2014.  The Department of Homeland Security ("DHS") issued a notice to appear, charging him with being removable under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled by an immigration officer.  An IJ issued a removal order in absentia when Angel-Lopez failed to appear for a hearing in 2015.  First proceeding pro se, Angel-Lopez eventually admitted to the allegations in his notice to appear, and the IJ found him removable as charged.  Based on a motion by the DHS, the IJ later found Angel-Lopez mentally incompetent to represent himself and assigned counsel to represent him.

In April 2019, Angel-Lopez, through counsel, applied for asylum and withholding of removal based on the claim that he had a well-founded fear of future persecution, and sought relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT").  In support of his application, Angel-Lopez submitted his psychiatric medical records, which revealed that he suffers from schizophrenia and sometimes exhibits "odd and bizarre behaviors."  He also proffered two declarations by Dr. Samuel Nickels, an expert on mental health services and the treatment of the mentally ill in El Salvador, who described the underfunded state of mental

2

healthcare in El Salvador. Dr. Nickels said that electroshock therapy was a "common treatment" at the sole public psychiatric hospital, and it was "often" delivered without anesthesia and without patient consent. However, the hospital recently began implementing protocols to better protect patients. He added that individuals with psychosocial disabilities faced strong stigmatization across Salvadorian society. The police "dealt harshly" with everyone and individuals with psychological disabilities were at an "extreme risk of harm or abuse." Gangs similarly abused individuals with mental illnesses.

At the hearing, Angel-Lopez's counsel proposed two particular social groups as the basis for Angel-Lopez's claims: (1) "individuals in El Salvador who suffer from schizophrenia"; and (2) "individuals from El Salvador who suffer from schizophrenia and display erratic behavior." The IJ determined that Angel-Lopez failed to show that his fear of future persecution on account of his proposed social groups was objectively reasonable. The IJ also found that Angel-Lopez failed to provide specific facts establishing a nexus between his membership in a particular social group and any harm he would experience. The BIA affirmed the IJ's denial of asylum and dismissed Angel-Lopez's appeal.[1] Angel-Lopez timely petitioned this Court for review.

---

[1] The agency also denied Angel-Lopez withholding of removal and CAT relief, but because he did not raise those claims in this Court, he has abandoned them. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005). Nor has he expressly challenged the agency's

3

II.

A.

We review only the decision of the BIA, except to the extent it adopts the IJ's decision or expressly agrees with the IJ's reasoning.  Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1350 (11th Cir. 2009) (quoting Mohammed v. U.S. Att'y Gen., 547 F.3d 1340, 1344 (11th Cir. 2008)).  Where, as here, the BIA agrees with the IJ's reasoning and adds its own observations, we review the decisions of both the BIA and the IJ.  Perez-Zenteno v. U.S. Att'y Gen., 913 F.3d 1301, 1306 (11th Cir. 2019).

To establish eligibility for asylum based on a well-founded fear of future persecution, as Angel-Lopez seeks here, he "must prove (1) a 'subjectively genuine and objectively reasonable' fear of persecution that is (2) on account of a protected ground."  Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1236 (11th Cir. 2006) (citations omitted); see also 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(A) (providing that an alien is eligible for asylum if he is a refugee and defining a refugee, in part, as someone who has a "well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion").  To satisfy the second prong, he must establish a nexus between the

_____

conclusion that he did not show a "pattern or practice" of persecution of similarly situated individuals for his asylum claim, so he has abandoned this issue as well.  Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989).

4

feared persecution and the statutorily protected ground by presenting "specific, detailed facts showing a good reason to fear that he . . . will be singled out for persecution on account" of the protected ground.  D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 818 (11th Cir. 2004); see also 8 U.S.C. § 1158(b)(1)(B)(i) (requiring the applicant to prove that his membership in his proposed social group "will be at least one central reason for persecuting" him).  In so doing, the applicant must provide some evidence of his persecutor's motives.  INS v. Elias-Zacarias, 502 U.S. 478, 481 n.1 (1992).

## B.

Angel-Lopez first says that the agency did not give "reasoned consideration" to his asylum application.  This is a claim of legal error that we review de novo.  See Jeune v. U.S. Att'y Gen., 810 F.3d 792, 799 (11th Cir. 2016) ("[A]n assertion that the agency failed to give reasoned consideration to an issue is a question of law that we review de novo.").  In a reasoned-consideration examination, we ask whether the agency considered the issues raised and announced its decision in terms sufficient to enable a reviewing court to perceive that it has "heard and thought and not merely reacted."  Id. at 804 (quotations omitted). "[T]he agency does not give reasoned consideration to a claim when it misstates the contents of the record, fails to adequately explain its rejection of logical conclusions, or provides justifications for its decision which are unreasonable and which do not

respond to any arguments in the record." Id. at 803. However, the BIA and IJ need not "address specifically each claim the petitioner made or each piece of evidence the petitioner presented." Ayala v. U.S. Att'y Gen., 605 F.3d 941, 948 (11th Cir. 2010) (quotations omitted).

Here, the record reflects that the agency afforded reasoned consideration to Angel-Lopez's asylum application. For starters, we note that the BIA assumed that Angel-Lopez had presented cognizable social groups for the purposes of his asylum application -- based on his schizophrenia diagnosis -- as do we, so we have no occasion to address this issue. The agency then reviewed the evidence Angel-Lopez offered in support of his claim that he was entitled to asylum because he would face persecution in El Salvador "on account of" his membership in his proposed social groups. 8 U.S.C. § 1101(a)(42)(A).

In analyzing Angel-Lopez's claim, the BIA recounted his evidence and arguments concerning the treatment of the mentally ill in El Salvador, including the stigmatization of mental illness, incidents of abuse of the mentally ill, and their risk of becoming homeless, incarcerated, or involuntarily institutionalized. Nevertheless, the BIA determined that El Salvador's treatment of the mentally ill was the result of underfunding and a lack of trained professionals, not on account of a desire to persecute the mentally ill, and that Angel-Lopez had not established that he would be "singled out" for persecution on account of his mental illness in

6

the future.  The BIA also discussed Angel-Lopez's argument that the IJ failed to

fully consider Dr. Nickels's evidence but found that the IJ considered the evidence

and was unpersuaded by it.

In addition, the agency specifically considered Angel-Lopez's evidence

concerning the risk of electroshock therapy if he returned to El Salvador.[2]  Angel-

Lopez cited this evidence in his pre-hearing brief in support of his asylum claim,

and later referred to all of the evidence to argue that he was also entitled to CAT

protection.  The IJ discussed electroshock therapy in the portion of his decision

denying Angel-Lopez's CAT claim, concluding that he had failed to show that it

was administered with the specific intent to harm patients.  Then, when resolving

Angel-Lopez's asylum claim, the IJ said he had "considered all the documentary

and testimonial evidence in this case," held that "relative economic and health-

related disadvantages and stigmatization do not constitute persecution," and

broadly concluded that "respondent has failed to show that his fear of persecution

on account of" his proposed social groups "is objectively reasonable."  On appeal,

as we've noted, the BIA expressly referenced Dr. Nickels's declarations -- the

sources of the electroshock therapy evidence -- and, after considering all of the

---

[2] The government claims that Angel-Lopez failed to exhaust his administrative remedies for his electroshock therapy claim.  However, in his brief to the BIA, Angel-Lopez argued that the IJ ignored Nickels's evidence that the Salvadorian government was unwilling and unable to protect him from persecution because the state-run hospital employed electroshock therapy without patient consent, which constituted torture.  This provided the BIA with a full opportunity to consider Angel-Lopez's argument and correct any error.  See Jeune, 810 F.3d at 800.

7

evidence in the record, affirmed the IJ's decision that Angel-Lopez had not established a well-founded fear of persecution on account of his membership in a protected group. On this record, the BIA and IJ decisions demonstrate that the agency understood and considered all of the issues and evidence Angel-Lopez presented and gave adequate and reasonable explanations for its decisions. See Jeune, 810 F.3d at 803.

C.

We are also unpersuaded by Angel-Lopez's challenge to the BIA's determination that he did not establish a nexus between his membership in a particular social group and the harm he claimed he would experience in El Salvador. We "review[] administrative fact findings under the highly deferential substantial evidence test," which requires us to "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Adefemi v. Ashcroft, 386 F.3d 1022, 1026–27 (11th Cir. 2004). To reverse a finding of fact, "we must find that the evidence not only supports that conclusion, but compels it." Elias-Zacarias, 502 U.S. at 481 n.1.

Angel-Lopez relies on a chain of inferences to argue that he would face abuse from gangs or law enforcement or end up institutionalized if he returns to El Salvador. But his testimony and the record do not compel these determinations. See id. For one thing, at the hearing before the IJ, Angel-Lopez indicated he

8

would have family support when he returned, because he could live with his father, with whom he'd had a "[s]omewhat good" relationship.  Moreover, he was symptom-free and psychiatrically stable at that time, and he intended to continue using his medication in El Salvador.

We recognize that Angel-Lopez might exhibit erratic behavior if his symptoms were to worsen.  However, neither Nickels's declarations nor the remaining evidence compel a finding that any stigmatization and incidents of abuse, if they were to occur, would be motivated by a desire to harm the mentally ill rather than be the result of underfunded treatment and insufficient training programs in El Salvador, or that Angel-Lopez would be "singled out" for harsh treatment on account of his mental illness.  See D-Muhumed, 388 F.3d at 818; see also Perez-Sanchez v. U.S. Att'y Gen., 935 F.3d 1148, 1158–59 (11th Cir. 2019) (granting a petition for review where a protected ground, even if entangled with a non-protected ground, "was one central reason, if not the central reason," for the motive behind "the harm visited on" the petitioner by his persecutors); Perez-Zenteno, 913 F.3d at 1312 (noting that "[t]he determination of a persecutor's motive when considering whether an alien is eligible for asylum is essentially factfinding," and upholding the agency's decision that the petitioner had not established "she was targeted for persecution on account of" her membership in

9

her proposed social group, where little to no evidence in the record supported her description of her persecutors' motive).

Similarly, Nickels's declarations do not compel the conclusion that electroshock therapy would be used on Angel-Lopez if his medical condition were to take a turn for the worse and if he were institutionalized. Nor, moreover, does the record compel the conclusion that if it became necessary to use electroshock therapy on Angel-Lopez, it would be used without anesthesia or informed consent. Indeed, Nickels noted that the hospital had started putting protocols in place for informed consent and was aware that electroshock therapy was an inferior treatment approach.

In short, we find nothing to indicate that the agency demonstrated a lack of reasoned consideration of the petitioner's averments or that the record compels reversal.

**PETITION DENIED.**

10

ANDERSON, Circuit Judge.

I concur in the result.