[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-13339
Non-Argument Calendar

_____

Agency No. A203-628-200

NORBERTO ROCUBERT-CAMPO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(July 23, 2021)

Before JILL PRYOR, LUCK, and EDMONDSON, Circuit Judges.


PER CURIAM:


Norberto Rocubert-Campo ("Petitioner"), a native and citizen of Cuba, petitions for review of the order by the Board of Immigration Appeals ("BIA"): a decision affirming the decision of the Immigration Judge ("IJ"). The IJ's decision denied Petitioner's applications for asylum, withholding of removal, and for relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). No reversible error has been shown; we deny the petition.


I.


Petitioner entered the United States in 2019 and was charged as removable. Petitioner filed an application for asylum, withholding of removal, and for protection under CAT.

In his application for relief, Petitioner said he had been persecuted by the Cuban government based on his political opinion. In 2014 in Cuba, Petitioner began working at a government-run slaughterhouse. In September 2015, Petitioner

2

complained to his boss that he was not being paid his full salary and was unable to buy products being sold to other employees.  Petitioner's boss said Petitioner was treated differently from other employees because Petitioner belonged to no political or governmental organizations, participated in no political rallies, and because Petitioner's mother-in-law (who had moved to the United States in 2014) was considered a traitor.  Petitioner's boss threatened to fire Petitioner if Petitioner did not change his political opinion.  Petitioner continued to work at the slaughterhouse for another year and then quit his job in September 2016.

In October 2016, Petitioner and his wife[1] applied for a business license.  The director of the national office of workers said Petitioner was ineligible for a business license based on Petitioner's problems with his last employer, his political opinion, and his lack of membership in a government group.  Petitioner accused the director of being a "puppet" for Castro, and Petitioner's wife made anti-Castro comments.  The director called the police.

As the police frisked Petitioner's wife, Petitioner says the officer touched his wife in an inappropriate way.  When Petitioner objected, the officer threw Petitioner to the floor and beat him, causing a cut on Petitioner's forehead.  The

---

[1] Petitioner's wife filed separately an application for relief.  That petition is not before us in this appeal.

3

officers also hit Petitioner's wife, resulting in a cut to her upper lip and a chipped tooth.

After arriving at the police station, Petitioner asked for medical assistance for himself and for his wife but was told that "people who are against the revolution don't deserve medical treatment."  Petitioner and his wife were detained for 72 hours, during which they were interrogated several times, beaten, and fed only bread and water.  When Petitioner and his wife were released, officers warned that next time would be worse if they did not change their political opinion or join a government group.  The officers also threatened to apply the "law of danger," referring to a law allowing a person to be detained for four to six years without a lawyer.

Petitioner was charged with no crime.  After his release, Petitioner suffered no long-term injuries and sought no medical assistance for the cut on his forehead, which he said healed by itself.

A month later -- in November 2016 -- Petitioner and his wife did obtain a business license and opened a beauty parlor.  After the license was issued, two inspectors from the national office of workers began harassing Petitioner by conducting frequent inspections and by extorting money from Petitioner and his wife.

In April 2017, Petitioner hosted a celebration for his wife's birthday. The police arrived at Petitioner's house and accused Petitioner of organizing a public protest against the government. The police beat Petitioner and his wife and took them to the police station. The police sprayed Petitioner and his wife with cold water and detained them overnight in a cold room. The next day, the police threatened to apply the law of danger and to "disappear" Petitioner and his wife if they did not change their political opinion. The police later fined Petitioner and his wife for "public scandal."

Petitioner testified that the police then began making unannounced inspections of Petitioner's house, performing more than ten inspections in 2018. Officers told Petitioner that he was being subjected to frequent inspections because of his political opinion and his failure to participate in a government organization. Petitioner and his wife moved twice to avoid the inspections: first to Petitioner's mother's house (3 kilometers away) and then to the wife's grandmother's house (5 kilometers away). The police, however, located them and continued the inspections. Petitioner and his wife ultimately moved back to their own house.

In February 2019, Petitioner was invited to participate in -- and failed to attend -- a local political meeting. Two days later, police came to Petitioner's home and took away his business license, products from the beauty salon, and Petitioner's personal belongings. The police also beat Petitioner and his wife. The

5

police told Petitioner that, if he and his wife failed to join a political group, the police would apply the law of danger and would "disappear" them.

During the beating, Petitioner's wife was struck on the hip where she had had a prior surgery and was unable to walk. Petitioner took her to the hospital even though he said he risked another beating for seeking medical assistance. At the hospital, the doctor took an x-ray and prescribed anti-inflammatory medicine and rest; the doctor refused to issue a certificate for the injury. Petitioner's wife stayed in bed for 25 days.

In April 2019, Petitioner traveled to the United States using his passport. He has remained here.

Petitioner testified that after he left Cuba, the police have visited his mother's house asking about him. When the police learned that Petitioner was in the United States, they said they would arrest Petitioner and "disappear" him if he returned to Cuba.

The IJ denied Petitioner's application for relief. The IJ determined that the mistreatment Petitioner experienced failed to rise to the level of persecution. The IJ also concluded that Petitioner failed to establish an objectively reasonable fear of future persecution. Petitioner was thus ineligible for asylum or for withholding of removal. About Petitioner's CAT claim, the IJ determined that Petitioner had

6

failed to show that it was more likely than not that he would be tortured if returned to Cuba.

The BIA affirmed the IJ's decision.

## II.

We review only the decision of the BIA, except to the extent that the BIA adopts expressly the IJ's decision.  See Gonzalez v. U.S. Att'y Gen., 820 F.3d 399, 403 (11th Cir. 2016).  Because the BIA agreed expressly with parts of the IJ's reasoning in this case, we review the IJ's decision to the extent of that agreement. See id.

The standard of review is extremely important in this kind of case.  We review administrative fact determinations under the "highly deferential substantial evidence test" whereby we "must affirm the BIA's decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'"  Adefemi v. Ashcroft, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (en banc). We have to "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision."  Id. at 1027. To reverse a fact determination, we must conclude "that the record not only

supports reversal, but compels it." See Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

On appeal, Petitioner first contends that the BIA applied incorrectly a clear-error standard in reviewing the IJ's decision. Whether the BIA applied the correct standard of review is a question of law that we review de novo. See Jeune v. U.S. Att'y Gen., 810 F.3d 792, 799 (11th Cir. 2016). In reviewing the decision of the IJ, the BIA reviews de novo questions of law and reviews findings of fact for clear error. See 8 C.F.R. § 1003.1(d)(3)(i)-(ii).

Here, the BIA recited properly the applicable standards of review. Contrary to Petitioner's assertions on appeal, the BIA then applied the appropriate standards in reviewing the IJ's factual findings and the IJ's legal determinations about Petitioner's eligibility for asylum, withholding of removal, and for CAT relief.

Petitioner next argues that the IJ and the BIA failed to give reasoned consideration to Petitioner's application for relief and failed to make adequate factual findings. Petitioner contends that the IJ and the BIA failed to consider properly this evidence: (1) that Petitioner was cited for "public scandal" following his 2017 detention; (2) that Petitioner was mistreated, detained, beaten and searched on multiple occasions between 2015 and 2019; (3) that Petitioner asked for medical assistance for himself and for his wife during his 2016 detention; (4) Petitioner's testimony that all doctors in Cuba are government employees; (5)

8

that -- after Petitioner left Cuba -- the Cuban police questioned Petitioner's mother about Petitioner's whereabouts; and (6) statements in the U.S. Department of State's 2018 Human Rights Report for Cuba ("2018 Country Report") that the Cuban government uses arbitrary arrests and short-term detentions to repress political activity.[2]

We review de novo whether the BIA and the IJ gave reasoned consideration to an issue. See Jeune, 810 F.3d at 799. "A reasoned-consideration examination does not look to whether the agency's decision is supported by substantial evidence." Id. at 803. Instead, "[w]hen assessing whether a decision displays reasoned consideration, we look only to ensure that the IJ and the BIA considered the issues raised and announced their decisions in terms sufficient to enable review." Indrawati v. U.S. Att'y Gen., 779 F.3d 1284, 1302 (11th Cir. 2015). "[W]e look to see that the agency 'heard and thought and not merely reacted.'" Id. The agency fails to "give reasoned consideration to a claim when it misstates the contents of the record, fails to adequately explain its rejection of logical conclusions, or provides justifications for its decision which are unreasonable and which do not respond to arguments in the record." Jeune, 810 F.3d at 803.

---

[2] In his appeal to the BIA, Petitioner argued broadly that the IJ failed to consider adequately his claims. Petitioner, however, never identified these specific examples of evidence as having been considered inadequately by the IJ or as contradicting the IJ's factual findings.

We have stressed that, although the IJ and the BIA must consider all evidence submitted by a petitioner, the IJ and the BIA -- in rendering a decision -- "need not address specifically each claim the petitioner made or each piece of evidence the petitioner presented." See Indrawati, 779 F.3d at 1302. To consider and to discuss are not the same thing. The IJ and the BIA must however discuss "highly relevant" evidence, meaning evidence that would compel a different outcome if discussed. See Ali v. U.S. Att'y Gen., 931 F.3d 1327, 1334 (11th Cir. 2019).

Here, the decisions of the IJ and the BIA reflect reasoned consideration of the issues presented by Petitioner and announce the agency's decision in terms sufficient to enable judicial review.

First, the IJ and the BIA considered expressly Petitioner's evidence and testimony about the mistreatment he experienced in Cuba, including "harassment, discrimination, searches, threats, physical attacks, a 72 hour detention in 2016, and an overnight detention in 2017." That the IJ and the BIA concluded that the harm Petitioner suffered did not rise to the level of persecution does not show that the agency failed to consider adequately Petitioner's evidence. Not all tribulations (even with some violence) amount to "persecution" for these kinds of cases.

We have said that "persecution is an extreme concept, . . . mere harassment does not amount to persecution." See Sepulveda v. U.S. Att'y Gen., 401 F.3d

10

1226, 1231 (11th Cir. 2005) (quotations omitted) (concluding that repeated threats to petitioner and to her family and the bombing of petitioner's place-of-work amounted to no persecution).  "Minor physical abuse and brief detentions" are also insufficient to establish persecution.  Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1353 (11th Cir. 2009) (concluding the record compelled no finding of persecution when petitioner was harassed routinely by government authorities, arrested, interrogated and beaten for five hours, and detained for four days).  We concluded recently -- in a case involving facts similar to this appeal -- that the record compelled no finding of past persecution when the petitioner (a journalist and critic of the Cuban government) suffered these harms: (1) was beaten by officers, resulting in petitioner's brief loss of consciousness and a cut to petitioner's forehead requiring stitches; (2) was arrested, detained overnight, interrogated for hours, and threatened with torture, imprisonment, and being made to disappear; (3) was fired from three jobs after government officials threatened the business owners; (4) was arrested, detained for three days, interrogated, and told to leave town due to his prior political problems; and (5) was detained while trying to leave Cuba and had his laptop and cell phone seized by government officials.  See Martinez v. U.S. Att'y Gen., 992 F.3d 1283, 1291-93 (11th Cir. 2021).

The IJ and the BIA also considered expressly the 2018 Country Report, recognizing that the Cuban government engages in political repression.  The IJ and

the BIA noted, however, that Cuba's acts of repression are directed chiefly at certain groups, that Petitioner failed to show he was a member of one of these specified groups, and that Petitioner failed to show that similar-situated persons ("private citizens who have expressed some form of opposition to the Cuban government") had experienced mistreatment rising to the level of persecution.

None of the evidence highlighted by Petitioner in this appeal is fully inconsistent with the agency's factual findings or would compel a different outcome. Although Petitioner was fined for public scandal following his 2017 detention, the record supports the BIA's and IJ's finding that Petitioner was charged with no crimes: Petitioner testified and presented a certificate showing he had no criminal record in Cuba and no outstanding warrants against him.

The record also supports the finding that Petitioner sought no medical treatment for his injuries. Although Petitioner asked for medical assistance while at the police station in 2016, Petitioner testified that he sought no medical treatment following his release, that his forehead cut healed by itself, and that he sought no medical treatment following his 2017 detention. The record also shows that Petitioner was able to obtain medical treatment for his wife's hip injury in 2017 and suffered no retaliation for doing so.

Petitioner points to his testimony that the Cuban police have asked his mother about his whereabouts and have threatened to arrest Petitioner and to

12

"disappear" him upon his return.  This evidence shows a continuation of the kind of harassment and threats that the IJ and the BIA concluded amounted, in the legal sense, to less than persecution.  That the IJ and the BIA did not discuss expressly these police visits does not persuade us that the IJ and the BIA failed to consider that evidence.  Nor does this evidence compel the conclusion that Petitioner would be singled out for persecution if returned to Cuba.  See Martinez, 992 F.3d at 1292 (concluding that substantial evidence supported a finding that officers' threats that petitioner would be imprisoned, tortured, and made to disappear -- while harassing and menacing -- constituted no persecution); Djonda v. U.S. Att'y Gen., 514 F.3d 1168, 1175 (11th Cir. 2008) (evidence that petitioner would be detained upon returning to his home country was insufficient to compel the conclusion that his treatment in the future would rise to the level of persecution).

In rendering their decisions, neither the IJ nor the BIA misstated the contents of the record or provided unreasonable justifications for the decision: justifications that were non-responsive to arguments in the record.  We cannot conclude that the BIA's decision lacked reasoned consideration of Petitioner's claims that preclude judicial review or that the record actually compels reversal.

PETITION DENIED.