[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12578

_____

Agency No. A208-742-381

MARIA ERCILIA MARTINEZ-GOMEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(September 1, 2021)

Before JILL PRYOR, LUCK, and BRASHER, Circuit Judges.

PER CURIAM:

Maria Ercilia Martinez-Gomez petitions for review of the Board of

Immigration Appeals's decision dismissing her appeal of the immigration judge's

denial of her application for asylum.[1]  After careful review and with the benefit of oral argument, we deny the petition.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Martinez-Gomez is a native and citizen of Honduras.  She entered the United States without inspection and the government charged her with being removable.  Martinez-Gomez conceded removability and filed an application for asylum, withholding of removal, and relief under the Convention Against Torture.[2]

Martinez-Gomez alleged in her application that she feared persecution and torture if removed to Honduras because of her membership in a particular social group.[3]  She stated that she fled Honduras after she was threatened by Mara 18 gang members.  The gang threatened her, Martinez-Gomez alleged, because she was a single mother and refused to sell drugs for them.  She feared the Maras would torture or kill her if she returned to Honduras because she reported the gang to the police, but the authorities "had no control over" them and didn't "protect women or children

---

[1] Although Martinez-Gomez's daughter is not included in the case caption, she was a derivative applicant on her mother's asylum application and Martinez-Gomez's petition for review lists her as a party.  Thus, she is a party to this petition.

[2] Martinez-Gomez's petition seeks review of the denial of her asylum claim but does not seek review of the denial of her claims for withholding of removal and relief under the Convention Against Torture.

[3] Martinez-Gomez alleged in her application that she was also seeking asylum because of her religion.  But she did not rely on this ground at the removal hearing and does not raise any issues related to religious persecution in her petition.

from abuse." In support of her application, Martinez-Gomez submitted articles and reports describing the conditions and ongoing gang violence in Honduras.

The immigration judge held a hearing on Martinez-Gomez's application. Martinez-Gomez told the immigration judge that she had reviewed her application with her attorney. She swore under oath that the information in her application was "all true and accurate." Her attorney stated that Martinez-Gomez's asylum claim was based on her membership in the particular social group of single mothers threatened by gang members for refusing to sell drugs. The government argued that this wasn't a cognizable social group and requested Martinez-Gomez's removal.

The immigration judge observed that "if the parties agree, the court may swear the respondent to the contents of the application" and rely on the asylum application to reach its decision. The immigration judge asked whether the parties wanted to stipulate that if Martinez-Gomez testified "fully," she would testify consistently with her application. Her counsel stated—twice—that he wanted "to stipulate to that." Her counsel also stated there were "no changes" to Martinez-Gomez's claim since her application had been filed.

The immigration judge asked the government if it would stipulate. Counsel for the government responded that "[i]f you're going to find that [the proposed social group] isn't a ground to move forward and that there's no basis to do so, then I don't have a problem stipulating that this is what she's going to say." Martinez-Gomez

3

didn't object to this statement and didn't seek to withdraw her consent to the stipulation. The immigration judge accepted the parties' stipulation that, as to Martinez-Gomez's asylum and withholding of removal claims, she would testify consistently with her application if she "were to testify fully."

Martinez-Gomez then testified about her claim under the Convention Against Torture. After her counsel finished questioning her, he didn't elicit any additional information related to her asylum claim. The immigration judge then asked Martinez-Gomez's counsel if he wished to present argument. Counsel declined to make a statement and stood on her application.

The immigration judge denied Martinez-Gomez's application and ordered her removal. As to Martinez-Gomez's asylum claim, the immigration judge concluded that she hadn't established past persecution because there was "no evidence that the Maras harmed her" or "did anything to her," and isolated incidents of threats or intimidation didn't amount to persecution. The immigration judge then concluded there was no evidence establishing a well-founded fear of future persecution. There was no proof that anyone had threatened Martinez-Gomez or her children since she left Honduras, the immigration judge observed, even though five of her children still lived there.

The immigration judge alternatively concluded that Martinez-Gomez had failed to establish that any persecution was based on a protected ground. There was

4

no nexus between Martinez-Gomez's alleged persecution and a protected ground, the immigration judge concluded, because her proposed social group—single mothers threatened by the Mara gang for refusing to sell drugs—was not a cognizable social group for purposes of asylum. The immigration judge concluded that Martinez-Gomez's social group didn't satisfy the particularity requirement because it was "amorphous" and "overbroad," and didn't satisfy the social distinction requirement because Martinez-Gomez hadn't established society's recognition of her proposed social group.

The immigration judge concluded that Martinez-Gomez's claim for withholding of removal failed for the same reasons as her asylum claim. The immigration judge then rejected her claim under the Convention Against Torture because Martinez-Gomez hadn't established that she would likely be tortured if removed to Honduras.

The board concluded that the immigration judge hadn't made any clear errors of fact, affirmed the immigration judge's decision, adopted it as the board's own, and dismissed Martinez-Gomez's appeal. The board rejected Martinez-Gomez's claim that the immigration judge erred in not conducting a full hearing, concluding that the parties' stipulation to waive her testimony was valid. Martinez-Gomez now petitions for our review of the board's decision.

**STANDARD OF REVIEW**

We review the board's decision as the agency decision, unless the board expressly adopts the immigration judge's opinion or agrees with its reasoning. Perez-Zenteno v. U.S. Att'y Gen., 913 F.3d 1301, 1306 (11th Cir. 2019). When the board adopts or agrees with the reasoning of the immigration judge's decision, we review both decisions. Id. We review de novo a claim that the agency failed to provide reasoned consideration for its decision or committed legal error. Jeune v. U.S. Att'y Gen., 810 F.3d 792, 799 (11th Cir. 2016); Lapaix v. U.S. Att'y Gen., 605 F.3d 1138, 1143 (11th Cir. 2010).

**DISCUSSION**

Martinez-Gomez argues that: (1) the immigration judge and the board didn't give reasoned consideration to her asylum claim; and (2) the immigration judge erred by not holding a full hearing on her application.

*Reasoned Consideration*

Martinez-Gomez argues that the immigration judge failed to make findings on whether her "alternative proposed particular social group of 'single mothers head of household'" was a valid social group for asylum purposes. She also faults the immigration judge and the board for not making findings on the country conditions in Honduras. Because of these omissions, Martinez-Gomez argues, the immigration

judge and board didn't give reasoned consideration to her asylum claim. We disagree.

An agency must give "reasoned consideration" to a petitioner's claims, Jeune, 810 F.3d at 803, and "consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted," Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1374 (11th Cir. 2006) (citation omitted). The agency is "required to consider all evidence that a petitioner has submitted." Jeune, 810 F.3d at 803. But it "need not address specifically each claim the petitioner made . . . ." Cole v. U.S. Att'y Gen., 712 F.3d 517, 534 (11th Cir. 2013) (quotation omitted) ), abrogated on other grounds by Nasrallah v. Barr, 140 S. Ct. 1683, 1689 (2020).

We reject Martinez-Gomez's argument that the immigration judge failed to give reasoned consideration to her "alternative" claim of a fear of future persecution "on account of being a single mother." At the hearing, the immigration judge asked Martinez-Gomez's counsel what social group she was relying on as a basis for asylum. Her counsel responded, "Single mother . . . who has been threatened by the Maras gang because she refused to sell drugs." To confirm this was "the theory of [her] claim," the immigration judge asked, "So single mother . . . who has been threatened by the Maras gang because she refused to sell drugs for them," and counsel confirmed that was the basis for her claim. The immigration judge asked if

Martinez-Gomez's asylum claim was based on "[a]nything else." The answer was "[n]o."

During the asylum hearing, Martinez-Gomez expressly relied on only one particular social group as a basis for asylum—single mothers threatened by the Maras for refusing to sell drugs—and the immigration judge gave reasoned consideration to that one claim. Martinez-Gomez is not entitled to a remand for the immigration judge to consider a claim she did not rely on at the hearing.

Martinez-Gomez next argues that the immigration judge and the board didn't "issue any specific factual findings regarding country conditions evidence." But the immigration judge wasn't required to "address specifically each . . . piece of evidence" she presented. See Tan, 446 F.3d at 1374 (quoting Morales v. INS, 208 F.3d 323, 328 (1st Cir. 2000)). The immigration judge admitted into evidence the articles and reports Martinez-Gomez submitted describing the conditions in Honduras. In its ruling, the immigration judge discussed these documents—which "reflect[ed] the violence and the crime and the activities of the gangs" in Honduras— and expressed sympathy for the problems Martinez-Gomez faced in her home country. Based on the immigration judge's detailed order of removal, we can perceive "that it has heard and thought and not merely reacted" to Martinez-Gomez's asylum claim generally and to evidence regarding the conditions in Honduras specifically. See id. at 1374.

8

Finally, Martinez-Gomez argues that the immigration judge's "failure to address the country conditions evidence" casts doubt on its conclusion that she had not established future persecution. Because of this alleged failure, she argues, the immigration judge failed to "evaluate whether there is a pattern or practice of persecution in Honduras of single mothers." But, as we explained above, the immigration judge did give reasoned consideration to the country conditions evidence. And, as we explained, "single mothers" in Honduras wasn't the particular social group that Martinez-Gomez relied on at the removal hearing. The immigration judge considered the evidence and claims that were put before it.

Because the immigration judge and the board gave reasoned consideration to Martinez-Gomez's asylum claim, we must deny this portion of her petition.

### *Whether Martinez-Gomez Received a Full Hearing*

Martinez-Gomez argues that the immigration judge erred by not holding a full hearing on her asylum claim. She concedes that testimony can be dispensed with "where the parties stipulate to the contents of the asylum application." But the stipulation here was improper, Martinez-Gomez argues, because it "was not the result of a fair, good faith discussion between the parties," and because she "was not asked if the application was complete and did not have an opportunity to add any additional detail or elaborate on the circumstances surrounding her experiences." These arguments cannot be squared with the record.

9

The regulations governing asylum claims require that an applicant "take the stand, be placed under oath, and be questioned as to whether the information in the written application is complete and correct." Matter of Fefe, 20 I. & N. Dec. 116, 118 (BIA 1989); accord 8 C.F.R. § 1240.11(c)(3)(iii) (providing that an applicant "shall be examined under oath on his or her application and may present evidence and witnesses in his or her own behalf"). The hearing and the examination of the applicant shouldn't "stop at this point unless the parties stipulate that the applicant's testimony would be entirely consistent with the written materials and that the oral statement would be believably presented." Fefe, 20 I. & N. Dec. at 118; see also Matter of E-F-H-L-, 26 I. & N. Dec. 319, 322 n.3 (BIA 2014), vacated on other grounds by Matter of E-F-H-L-, 27 I. & N. Dec. 226 (A.G. 2018) (recognizing that, under Fefe, "a full examination of the applicant might not be strictly required" following a stipulation, provided that the applicant "testif[ies] under oath as to the correctness and completeness of the application.").

Here, Martinez-Gomez swore that the contents of her application were "all true and accurate." The immigration judge asked the parties whether they would stipulate that if Martinez-Gomez testified "fully," her testimony would be consistent with her application. Martinez-Gomez's counsel didn't seek more time to discuss the stipulation with the government. Counsel instead stated twice (without qualification) that he would stipulate. Although the government agreed to stipulate

10

provided that the immigration judge ultimately denied Martinez-Gomez's claim, the immigration judge didn't adopt this caveat as part of the stipulation. And Martinez-Gomez didn't object to this statement or withdraw her willingness to stipulate. On these facts, we cannot find that the stipulation the parties voluntarily entered into was improper or invalid.

Martinez-Gomez maintains that the stipulation was improper because she swore that her application was accurate but didn't swear it was complete. But she stipulated that if she were to testify "fully," her testimony would be consistent with her application. "Fully" is just another way of saying "completely." And, following Martinez-Gomez's testimony as to her Convention Against Torture claim, her counsel didn't try to elicit testimony relevant to her asylum claim; rather, he had "no other questions." Finally, Martinez-Gomez never proffered what additional facts she would've offered had she testified in support of her asylum claim. She therefore can't establish that the absence of her testimony prejudiced her or otherwise constituted reversible error. See Lapaix, 605 F.3d at 1144 (holding that the applicant "was not denied an opportunity to present her case" where the immigration judge "[a]t no point . . . refuse[d] to hear admissible testimony," and the applicant failed to "demonstrate that, in the absence of the alleged violations, the outcome of the proceeding would have been different.").

**PETITION DENIED.**

11