[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11272

Non-Argument Calendar

_____

AREFIN SAMSUL,

                                                    Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

                                                    Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A213-165-530

_____

Before WILSON, ROSENBAUM, and BRASHER, Circuit Judges.

PER CURIAM:

Arefin Samsul[1] seeks review of the Board of Immigration Appeals's ("BIA") denial of his motion to reopen his removal proceedings under 8 C.F.R. § 1003.2(c) based on ineffective assistance of counsel. He contends that the BIA failed to give reasoned consideration to his arguments and abused its discretion by denying the motion to reopen. After review, we grant Samsul's petition in part and deny it in part.

## I.

Samsul is a native and citizen of Bangladesh who entered the United States on June 27, 2019. He was apprehended near the border in Texas and, the next day, sat for a credible-fear interview with an asylum officer.

In the credible-fear interview, Samsul claimed that he feared persecution by the ruling Awami League due to his active membership in the rival Bangladeshi National Party ("BNP"), and that he had been physically harmed on five prior occasions. The worst incident, he stated, occurred in June 2018 when Bangladeshi police kidnapped him for several days, beat him repeatedly, made him

---

[1] The petitioner is referred to as both Samsul Arefin and Arefin Samsul throughout the record. We refer to him as Arefin Samsul for consistency with the agency decisions below.

drink his own urine, and threatened to kill him for belonging to the BNP.  The asylum officer determined that Samsul demonstrated a credible fear of persecution or torture.

### A. Initiation of Removal and Preliminary Matters

In August 2019, the Department of Homeland Security issued Samsul a notice to appear, charging him as removable for entering the country without authorization.  Samsul retained counsel, Zubaida Iqbal, who appeared with Samsul at a joint bond and initial removal hearing in October 2019, conceded the grounds for removal, and indicated that Samsul intended to apply for asylum. The IJ reset the bond hearing for October 29, 2019, to permit the government "to investigate a certain matter for purposes of bond."

Samsul personally appeared for the October 29 hearing, stating that his counsel could not make it and had instead asked him to request a new hearing date and "to submit the asylum papers." The IJ was displeased with counsel but reset the hearing so that Samsul's rights would "not be prejudiced in any way."  When the hearing resumed in November 2019, counsel presented Samsul's form I-589 application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT"), and indicated that she needed additional time to obtain and translate affidavits from witnesses in Bangladesh.  The IJ set the final removal hearing for January 22, 2020, and a deadline of January 8 for submitting any supporting evidentiary materials.

The record contains two sets of evidentiary materials filed by Iqbal on January 9, 2020, one day late. One set contained Bangladesh country reports. The other set included copies of identification materials and translated affidavits from Samsul's family, colleagues, neighbors, and doctors. Iqbal filed an emergency motion to accept late filing in connection with these documents. Also, before the hearing, Homeland Security filed a position statement indicating that it viewed the BNP as a tier III undesignated terrorist organization that rendered Samsul ineligible for asylum.

### B. Merits Hearing

The merits hearing on Samsul's asylum application went forward on January 22, 2020, after Iqbal arrived nearly one hour late. At the outset of the hearing, Iqbal indicated that she had received additional documents and photos from Samsul's family the night before. The court declined to accept these documents. The court also declined to admit the country reports and affidavits, stating that these documents were not filed on time and that the government would be prejudiced because Iqbal's own USPS records indicated that the government had not yet received the affidavits. As a result of these decisions by the IJ, Samsul's testimony was the sole evidence supporting his asylum application.

Samsul testified as follows at the hearing. Samsul officially joined the BNP's student wing on December 16, 2016, which is a national holiday in Bangladesh. Three days later, he was threatened by members of the ruling Awami League's student wing. Then, on January 1, 2017, the anniversary of the date the BNP

student wing was established, he was punched and kicked by Awami League members for participating in a BNP event at a college. The college principal rescued him and took him to a doctor. Samsul and his father went to the police, but the police did not accept his report of the incident and said he "better not come to the police station" anymore.

Samsul was attacked a second time on August 15, 2017, by Awami League members wielding bamboo sticks at a blood donation program that Samsul had organized. Again, Samsul tried to report the incident to the police, but he was warned he would be charged with crimes if he tried to file any other reports against ruling party members.

A third attack occurred on December 16, 2017, during a wreath laying ceremony. Samsul and other BNP members were attacked by the Awami League, and the leader of the local BNP student wing was killed. Samsul was beaten and then treated by a village doctor in his home for several days. While he was at the doctor's home, Awami League members came by his house three times looking for him.

Then, on January 1, 2018, Samsul was attacked for a fourth time shortly after a BNP event. He and another BNP member were pulled from a rickshaw and punched and kicked. Samsul ran away, and then spent the night at the home of a member of parliament and BNP publicity secretary. After this incident, his father warned him that their family was "being ruined" due to his involvement in politics and the threats and attacks from the Awami League. He

went to his grandparents' home for about a week but then came back and resumed his political activities.

Finally, on June 3, 2018, the police acting in concert with the Awami League picked Samsul up outside his home, handcuffed him, and took him not to jail but to a house, where his arms and legs were tied. After being "tortured . . . mentally" for ten days, the police dropped him by a gas station with his arms and legs tied up. A taxi driver who recognized Samsul found him and contacted Samsul's partner. Samsul was taken to a hospital but refused treatment because of his involvement with BNP politics. He eventually found a doctor who treated him at his home. After this incident, he spent several months on the run, staying with relatives in other areas of Bangladesh, but he was repeatedly followed and threatened by the Awami League. Samsul left Bangladesh on December 20, 2018.

Notably, the late-filed affidavits on their face appear to corroborate Samsul's account. Several affiants testified about his active involvement with the BNP. Others corroborated various details of Samsul's account. For example, his father testified about arranging medical treatment for Samsul after the attack on January 1, 2017; attempting to file a police report with him; being present at his home on June 3, 2018, when the Awami League and police came looking for his son and threatened to kill him; and soon after watching his son being abducted and then returned ten days later. In addition, the doctors whom Samsul identified in his testimony swore that they treated him for injuries stemming from the attacks.

During the hearing, Samsul appears to have suffered a panic attack or other medical episode soon after recounting his colleague's murder on December 16, 2017. He reported that his "heart [wa]s shaking" and, after a short break, that his arms and legs felt "paralyzed." Iqbal found that his hands were cold, and the IJ observed that he appeared to be hyperventilating. The IJ suggested calling an ambulance and resetting the hearing. Samsul responded that, if he stayed, he "w[ould] be more sick." The government noted that Samsul appeared to be getting worse, that it believed that the facts were not in dispute and the issue was more of a legal nature, and that it "would have a strenuous objection into proceeding" with Samsul's testimony. The IJ then noted that Samsul appeared to be breathing better, and Iqbal stated that Samsul should decide whether they should continue. The IJ stated that Samsul could leave and finish testifying later, and Iqbal indicated she could return and finish the hearing at a later date. Samsul responded that, when he remembered his abduction, he felt like he was "losing [his] consciousness." However, after being informed by the IJ that he could continue with his testimony, submit the case for decision as is, or postpone the hearing, he chose to keep testifying and confirmed that he felt well enough to do so.

## C. *IJ's and BIA's Decisions Denying Relief from Removal*

In February 2010, after the hearing, the IJ issued a written decision denying asylum. After reiterating that he had declined to admit any documentary evidence, the IJ addressed Samsul's credibility. The IJ determined that Samsul lacked credibility due to "an

omission and several inconsistencies," which were as follows: (a) Samsul's asylum form, which he confirmed at the hearing was complete and accurate, failed to note that he first traveled to India upon leaving Bangladesh as reflected in his testimony; (b) he indicated that he attended some college at the hearing but only high school in the credible-fear interview; (c) he "testified inconsistently" about a nickname he sometimes used but did not disclose on the asylum form or during the credible-fear interview; (d) he failed to list his participation in the Rotary Club on the asylum application; and (e) the IJ felt that some of his answers were nonresponsive, citing in particular his failure to explain "the motivations of his attackers." The IJ did not accept Samsul's explanations that the minor omissions and inconsistencies were inadvertent errors and that the education system in Bangladesh was constructed differently than in the United States.

Having made an adverse credibility determination, the IJ turned to "whether [Samsul] presented sufficient documentary evidence to rehabilitate his incredible testimony or independently satisfy his burden of proof." The IJ found that Samsul "failed to timely file any documentary evidence to support his claim, and no witnesses appeared" on his behalf. Accordingly, the IJ denied relief based solely on the adverse credibility finding and ordered Samsul removed to Bangladesh.

Samsul, through new counsel, appealed to the BIA, which affirmed the IJ's decision in September 2020. The BIA upheld the exclusion of Samsul's documentary evidence and the adverse

credibility determination for the reasons stated by the IJ. And based on the lack of timely-filed documentary evidence, the BIA concluded that Samsul's "failure to credibly establish his claim is dispositive" and that he had not met his burden for asylum, withholding of removal, or CAT relief.

### D. Motion to Reopen Based on Ineffective Assistance

Following the adverse BIA decision, Samsul timely filed a motion to reopen alleging ineffective assistance of immigration counsel Iqbal and a supporting affidavit from Samsul. Samsul alleged that Iqbal prejudiced his case by providing ineffective assistance in several ways, including by failing (1) to inform him of deadlines and the consequences of not complying; (2) to adequately prepare him for the hearing; (3) to timely submit critical documentary evidence; (4) to prepare a court-ordered proposed summary of the facts; (5) to appear in court on time or at all; (6) to correct errors in Samsul's asylum form; and (7) to move for a continuance when the government stated it had not received his documentary evidence and when Samsul became ill during the hearing.

The BIA denied the motion to reopen in April 2021. The BIA did not address whether counsel's assistance was ineffective because it found that, even assuming "his prior counsel's assistance was ineffective, the respondent has not established that he received ineffective assistance of counsel because he has not shown that he was prejudiced." Rejecting points (6) and (7) above, the BIA noted that Samsul confirmed the asylum form was complete and accurate at the hearing and stated he wished to proceed with the hearing

after being presented with the opportunity for a continuance. As for points (1), (2), and (5), the BIA explained that these alleged deficiencies did not impinge on the fundamental fairness of the proceeding. Finally, points (3) and (4), in the BIA's view, were insufficient to show a reasonable probability of a different result. After briefly restating the IJ's grounds for the adverse credibility finding, the BIA stated simply that "[t]here is no indication that the supporting evidence or summary of facts would overcome the credibility concerns here or independently establish the respondent's claim." This petition for review followed.

## II.

"We review the BIA's denial of a motion to reopen for abuse of discretion, limiting our review to determining whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or capricious." *Sow v. U.S. Att'y Gen.*, 949 F.3d 1312, 1317–18 (11th Cir. 2020) (quotation marks omitted). To warrant reopening based on ineffective assistance, the petitioner must demonstrate both that his counsel's performance was deficient and that the deficiency prejudiced his case. *Id.* To show prejudice, the petitioner must demonstrate that "there is a reasonable probability that but for the attorney's error, the outcome of the proceedings would have been different." *Id.* at 1318 (quotation marks omitted).

We review *de novo* an argument "that the agency failed to give reasoned consideration to an issue." *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 799 (11th Cir. 2016). We will grant a petition for

review, vacate the agency's decision, and remand for further proceedings "when a decision of an immigration judge or the BIA is so lacking in reasoned consideration and explanation that meaningful review is impossible." *Id.* at 803.

While the BIA need not explicitly address all evidence and claims presented by a petitioner, it must do enough to show that it "consider[ed] the issues raised and announce[d] its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Id.* (cleaned up). Under our precedent, the BIA fails to give reasoned consideration "when it misstates the contents of the record, fails to adequately explain its rejection of logical conclusions, or provides justifications for its decision which are unreasonable and which do not respond to any arguments in the record." *Id.*

## A.

Here, the portion of the BIA's decision denying reopening based on ineffectiveness of counsel relating to obtaining and timely submitting important documentary evidence does not reflect reasoned consideration sufficient to enable meaningful review. The BIA summarily found "no indication that the supporting evidence or summary of facts would overcome the credibility concerns here or independently establish the respondent's claim." But the BIA failed to explain its rejection of the logical conclusion that the documentary evidence, had counsel properly presented it for the IJ's consideration, created a reasonable probability of a different result.

First, the supporting affidavits were clearly material to Samsul's credibility.  On their face, the affidavits appear to corroborate important aspects of his account, including his active membership in the BNP, his receipt of medical treatment for injuries after the attacks, his attempts to report the attacks to police, his abduction by police forces affiliated with the Awami League on June 3, 2018, and his hiding from authorities and receiving death threats following the abduction.  For example, Samsul's father and brother recounted their personal experiences from June 3, when the police came to their home and threatened Samsul's life before abducting him for ten days.  Also, a relative claimed to have housed Samsul after his abduction and that relative spoke of death threats against Samsul by Awami League members.

If timely presented with the affidavits, which on their face appear to corroborate many details in Samsul's account, the IJ very well could have concluded that the minor omissions and inconsistencies among his testimony, asylum application, and credible fear interview, as well as his purportedly nonresponsive answers to a question or two, did not undermine the credibility of his otherwise detailed and supported account.  *See* 8 U.S.C. § 1158(b)(1)(B)(iii).  Notably, it appears the government did not dispute the basic facts of Samsul's account but rather took the view that the "dispositive issues" were of a "legal nature" apparently relating to BNP's status.  On this record, we cannot meaningfully review the BIA's unexplained rejection of the logical conclusion that, had the

documentary evidence been properly submitted, there is a reasonable probability of a different credibility finding. *See Jeune*, 810 F.3d at 799.

Second, even assuming the IJ's adverse credibility finding would have remained the same, the BIA failed to explain why the documentary evidence itself would not have presented grounds for asylum relief. "[A]n adverse credibility determination does not alleviate the [agency's] duty to consider other evidence produced by an asylum applicant." *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1287 (11th Cir. 2005). And if an applicant presents other evidence of persecution besides his own testimony, "it is not sufficient for the [agency] to rely solely on an adverse credibility determination in those instances." *Id.*

Here, the documentary evidence tends to suggest that Samsul suffered politically motivated death threats and violence by individuals affiliated with the ruling party, including being abducted and held captive for ten days. Given these colorable grounds for granting asylum relief, *see, e.g., Mejia v. U.S. Att'y Gen.*, 498 F.3d 1253, 1257 (11th Cir. 2007), the BIA's unexplained rejection of this evidence is insufficient to permit meaningful review.

For these reasons, we conclude that the BIA failed to consider the issues raised and to announce its decision in terms sufficient to show "that it has heard and thought and not merely reacted." *Jeune*, 810 F.3d at 799. Accordingly, we grant the petition for review as to Samsul's ineffective-assistance claims relating to the failure to timely obtain and submit documentary evidence,

including counsel's alleged failure to meaningfully communicate with him about important aspects of his case. We vacate the BIA's decision as to those claims, and we remand for further proceedings consistent with this opinion.

**B.**

We deny the petition for review in part as to Samsul's other asserted grounds of ineffectiveness. The BIA adequately explained its rejection of these grounds, and we cannot say that it abused its discretion by denying relief. *See Sow*, 949 F.3d at 1317–18. The BIA reasonably determined that Samsul's counsel's lateness for the merits hearing did not prejudice him because he did not demonstrate a reasonable probability that, if she had prepared him to testify immediately before his testimony, he would have been found credible. Likewise, Samsul has not explained what counsel could have asked on redirect or argued in closing that would have changed the outcome of the proceeding, so there is not a reasonable probability that the IJ would have reached a different conclusion if counsel were on time.

For similar reasons, Samsul has not shown a reasonable probability that his counsel prejudiced him by allowing him to continue testifying, as he requested, after he fell ill during the hearing. His suggestion that his testimony would have been more credible had the hearing been continued is purely speculative. As for the omissions on his asylum application, the BIA reasonably determined that he was not prejudiced by counsel's ineffectiveness in light of Samsul's confirmation to the IJ that he had personally

reviewed the application "in Bengali, line by line, question by question, answer by answer," and did not wish to correct any omissions.

## III.

In sum, we grant Samsul's petition for review in part, relating to his claims of ineffective assistance based on counsel's failure to timely submit critical documentary evidence. We vacate the BIA's denial of those claims and remand for further proceedings consistent with this opinion. We deny the petition as to Samsul's remaining claims.

**PETITION GRANTED IN PART, DENIED IN PART, AND REMANDED.**